■ RUPERT J. SMITH et al., Respondents, v FREDERIC P. PUTNAM, Appellant.—Order, Supreme Court, New York County (C. Beauchamp Ciparick, J.), entered August 17, 1988, which, *inter alia,* granted plaintiffs' motion for summary judgment as to liability and directed an assessment of damages, denied defendant's cross motion to dismiss the complaint pursuant to CPLR 3211 (a) (5) and denied defendant's later motion for renewal and leave to serve an amended answer, unanimously modified, on the law, to deny plaintiffs' motion for summary judgment, vacate the direction for an assessment of damages, grant the cross motion to dismiss the complaint and, except as thus modified, affirmed, without costs or disbursements.

Having already prevailed in a prior action in which defendant, the buyer, sought rescission of a May 27, 1986 contract of sale of a 100-year-old six-story loft building located at 177-179 Duane Street in Manhattan for $1,625,000 and the return of his $100,000 down payment, plaintiffs now seek additional damages from defendant as a result of his failure to close title. After obtaining two adournments of the closing, for which he paid a premium of $5,500 each adjournment, defendant sought a third adjournment but never paid the required $9,500 or the additional $70,000 down payment. Instead, according to plaintiffs, he advised them four days later that he could not go through with the purchase because of the high costs of renovation. When plaintiffs responded by demanding payment of the $9,500 and $70,000, respectively, defendant failed to reply in writing but, according to plaintiffs, orally advised them that he had made a mistake in that the project was too costly and, having been unable to find anyone to whom he could "flip" his purchase obligations, he would rather cut his losses and withdraw. Plaintiffs' attorney then advised defendant that the closing would be held on September 30, 1986, the date up to which defendant had paid the appropriate adjournment charges, and requested that he attend. Defendant did appear, but, without explanation, failed to perform. That same day, plaintiffs' attorney wrote to defendant, advising him that unless he appeared on October 10, 1986, prepared to close, the contract would be deemed breached by reason of default and that all his rights thereunder, including any payments made on account, would be lost. As to the October 10th date, time was made of the essence. Plaintiffs appeared on that date with a signed deed. Defendant failed to appear. On October 14,

1986, plaintiffs' attorney wrote to defendant advising him that as a result of his default the down payment, which had been held in escrow, had been delivered to plaintiffs and that the premises were being placed back on the market. Defendant was offered the opportunity to close in accordance with the terms of the contract at any time prior to plaintiffs' entry into a new contract of sale with a third party. Defendant was expressly advised that plaintiffs had not elected to cancel the contract and that they reserved all their rights to hold defendant responsible for any damages.

After dismissal of defendant's rescission action, plaintiffs brought this action to recover $435,000, the difference between $1,625,000, the May 27, 1986 contract price, and $1,090,000, the price for which the premises were ultimately sold to a third party, less the $100,000 down payment. Defendant's answer asserted several affirmative defenses, including plaintiffs' election of remedies based on their retention of the down payment which, defendant asserted, constituted liquidated damages. Plaintiffs then moved for summary judgment, which the motion court, *inter alia,* granted as to liability, setting the matter down for an assessment of damages. Defendant's motion to dismiss the complaint, based on plaintiffs' retention of the down payment, was denied. We modify to dismiss the complaint.

Paragraph 33 of the contract provided that in the event of the buyer's default, the sellers could elect to cancel the contract, which would become null and void 10 days after notice of such election to the buyer's attorney. In such case, the sellers would "be entitled to and retain the [e]scrow [b]alance as liquidated damages, the same as if this agreement had never been made". On the basis of this provision, plaintiffs cannot both retain the down payment as liquidated damages and recover additional damages. In fact, the initial draft of the contract of sale, which was prepared by plaintiffs' attorney, contained a provision that the sellers would be free to seek other relief available to them under the law as an alternative to their retention of the down payment as liquidated damages. This clause was specifically deleted at defendant's insistence. In any event, even assuming that plaintiffs had the choice of alternatives, it is clear that, by their letter of September 30, 1986, advising defendant of the forfeiture of the down payment in the event he defaulted on October 10, 1986 and the subsequent exercise of that right, they clearly elected to accept the $100,000 as liquidated damages. The September 30th letter was explicit in its expression of a

binding election which was self-executing upon defendant's default. Plaintiffs' October 14th letter did not preserve any right to claim additional damages. It was no more than a belated, ineffective second thought, purporting to disallow any cancellation and to assert plaintiffs' right to seek additional damages. As such, it was ineffective to restore rights already lost. A contract provision for liquidated damages controls the rights of the parties in the event of breach, notwithstanding that the stipulated sum may be less than the actual damages allegedly sustained. (*X.L.O Concrete Corp. v Brady & Co.,* 104 AD2d 181, *affd* 66 NY2d 970.) Concur—Kupferman, J. P., Sullivan, Milonas and Ellerin, JJ.