HUDSON-PORT EWEN ASSOCIATES, L.P., Respondent, v CHIEN KUO et al., Appellants, et al., Defendant.

Third Department, March 7, 1991

## APPEARANCES OF COUNSEL

*Herrick, Feinstein (Stephen M. Rathkopf, Arthur G. Jakoby* and *Sorrel Danilowitz* of counsel), for appellants.

*H. Clark Bell (Jerry A. Weiss* of counsel), for respondent.

## OPINION OF THE COURT

CASEY, J.

Following execution of a contract to sell real property located on the Hudson River, a title report revealed that portions of the land were subject to a commerce grant issued by the State and a right of reentry contained in letters patent issued by the State. Although given the opportunity, defendants Chien Kuo and Helen Kuo (hereinafter defendants), the sellers, did not remedy these defects. At the closing, attended by representatives of the parties' respective title insurance companies, plaintiff (the buyer) refused to tender the balance of the purchase price unless defendants conveyed marketable title. The above-noted land grants not having been removed, plaintiff's title company refused to insure the title. Defendants' title company, however, indicated its willingness to insure the title in the amount of the $500,000 purchase price without qualification, but refused to provide a rider for the future market value of the property in the amount of $2,000,000, as requested by plaintiff; the record discloses that plaintiff intended to develop the subject premises for commercial, rather than residential, purposes. Thereafter, plaintiff

commenced this action to recover the $50,000 down payment and $500 title examination costs; defendants counterclaimed for breach of contract. The parties moved for summary judgment, which Supreme Court awarded in plaintiff's favor. Supreme Court concluded that defendants had failed to convey marketable title as defined by the contract.

■ Defendants contend that the contract required only the tender of insurable title and that they complied with this requirement when they produced an insurance company willing to insure title for the purchase price. We find the contract to be ambiguous, but since determination of the intent of the parties does not depend upon extrinsic evidence, the contract is to be interpreted by the court as a matter of law; we agree with Supreme Court that summary judgment in favor of plaintiff is appropriate.

Summary judgment is not limited to those cases where the contract is free from ambiguity and not subject to differing interpretations *(see, Sutton v East Riv. Sav. Bank,* 55 NY2d 550; *Bensons Plaza v Great Atl. & Pac. Tea Co.,* 44 NY2d 791; *Laba v Carey,* 29 NY2d 302). "It is the rare writing that requires no interpretation" *(Bensons Plaza v Great Atl. & Pac. Tea Co., supra,* at 792-793). The well-established principles governing the court's role in these circumstances were clearly articulated by the Court of Appeals in *Hartford Acc. & Indem. Co. v Wesolowski* (33 NY2d 169):

"[I]t is the repsonsibility *[sic]* of the court to interpret written instruments * * *. This is obviously so where there is no ambiguity. * * *

"If there is ambiguity in the terminology used, however, *and* determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury * * *. On the other hand, if the equivocality must be resolved wholly without reference to extrinsic evidence the issue is to be determined as a question of law for the court" *(supra,* at 172 [emphasis supplied]).

Thus, the existence of an ambiguity will not preclude summary judgment unless resolution of that ambiguity depends upon extrinsic evidence *(supra).* The equivocality in the contract at issue here can and should be resolved on the basis of the agreement alone, without reference to extrinsic evidence.

Turning to the merits, the court's aim should be "a practical

interpretation of the expressions of the parties to the end that there be a 'realization of [their] reasonable expectations' " *(Brown Bros. Elec. Contrs. v Beam Constr. Corp.,* 41 NY2d 397, 400, quoting 1 Corbin, Contracts § 1, at 2). The parties' intent "must be gleaned from the several provisions of the contract" *(Laba v Carey, supra,* at 308) and "not merely literal language, but whatever may be reasonably implied therefrom must be taken into account" *(Sutton v East Riv. Sav. Bank, supra,* at 555).

In addition to the clause requiring insurable title, the contract provides that "[t]he deed shall be the usual Bargain & Sale * * * duly executed and acknowledged by the seller(s) * * * so as to convey to the purchaser(s) the fee simple of said premises, *free of all encumbrances, except as herein stated"* (emphasis supplied). The contract contains no exception for the encumbrances which admittedly render the title unmarketable. In *New York Investors v Manhattan Beach Bathing Parks Corp.* (229 App Div 593, 599, *affd* 256 NY 162), the Second Department held that the existence of a similar clause in a contract for the sale of real property, when read together with a clause in the contract requiring the seller to give and the purchaser to accept insurable title, provided that the buyer "should receive not only a title that the title company was willing to insure, but one that was free from all encumbrances". On appeal, the Court of Appeals concluded that the record did not "disclose an unequivocal approval of the title" by the title company, and the court specifically left open the question "whether approval, if given, would have been a sufficient answer to the objection that the title was unmarketable" *(New York Investors v Manhattan Beach Bathing Parks Corp.,* 256 NY 162, 164, 165, *supra).* A subsequent case, *Laba v Carey (supra),* concerned a contract that required insurable title and conveyance by bargain and sale deed free of all encumbrances, except those noted in the contract. The buyers contended that they were justified in rejecting the title rendered by the seller for two reasons: (1) the title insurance company's approval contained certain exceptions, making the title uninsurable, and (2) title was unmarketable. After concluding that the seller had tendered insurable title within the meaning of the contract, the court proceeded to consider the question of whether title was marketable, an issue that had to be resolved only if the contract gave the buyers the right to insist on both insurable title and marketable title.

It is our view that when, as here, the contract requires

such title as a title company will insure and also requires conveyance of a fee simple free of all encumbrances save those specified in the contract, the buyer is entitled to insist on both insurable title and title which is free of all encumbrances save those specified in the contract *(see, Creative Living v Steinhauser,* 78 Misc 2d 29, 31, *affd* 47 AD2d 598, *lv denied* 36 NY2d 643). Any other construction would give no meaning to the requirement that the seller convey fee simple free of all encumbrances.

■ An issue of fact is claimed to arise out of defendants' attestations of their understanding of what the contract language means. Defendants do not claim, however, that their understanding of the meaning of the contract was communicated to the buyer prior to or contemporaneous with the execution of the contract, and it is a well-established principle of law in New York that "[u]ncommunicated subjective intent alone cannot create an issue of fact where otherwise there is none" *(Wells v Shearson Lehman/American Express,* 72 NY2d 11, 24). In the absence of any evidence that the opposing views now advanced were either discussed or considered by the parties during the process leading up to the execution of the agreement, the words in the contract must be given the meaning which those to whom they are addressed would reasonably be expected to perceive *(see, Messina v Lufthansa German Airlines,* 47 NY2d 111, 115).

As previously discussed, application of the principle to give full meaning to all of the relevant provisions of the contract leads to the conclusion that both insurable title and title free of all encumbrances were required. In these circumstances, the express provisions of the contract must prevail over the conclusory allegations of either party, whose subjective intent is irrelevant *(Schmidt v Magnetic Head Corp.,* 97 AD2d 151, 157). Since the only extrinsic evidence asserted as the basis for creating a factual issue consists of defendants' uncommunicated subjective intent, summary judgment is appropriate and the order granting plaintiff's motion should be affirmed.

YESAWICH, JR., J. (dissenting). We respectfully dissent.

The majority holds evidence of uncommunicated* subjective intent inadmissible to help resolve ambiguous contract lan-

---

* Actually, the record does not disclose whether defendants' intent was shared with plaintiff. Moreover, the question of whether uncommunicated subjective intent is admissible to resolve ambiguous language is an issue neither raised nor briefed by the parties.

guage. Prior case law, however, merely indicates that where there is no ambiguity in the document, uncommunicated subjective intent alone cannot create it *(Wells v Shearson Lehman/American Express,* 72 NY2d 11, 24). Here, as the majority notes, the contract is ambiguous on its face. Accordingly, *Wells v Shearson Lehman/American Express (supra)* is inapplicable.

Summary judgment should only be awarded when a contract is free from ambiguity and not subject to differing interpretations *(see, Yogurts Intl. v Grand Union Co.,* 92 AD2d 936). Where an ambiguity cannot be resolved solely by reference to the document itself, determination of the contracting parties' intent is for resolution by the trier of fact *(Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169, 172). To support their interpretation of the agreement, defendants Chien Kuo and Helen Kuo (hereinafter defendants) submitted an uncontroverted affidavit attesting that at the time of contracting they understood the contract to require title insurable in the amount of the purchase price only. Significantly, plaintiff neither challenges Chien Kuo's explanation of what occurred between the parties before they executed the contract, nor indicates that it did not share Kuo's understanding that title only need be one that "a New York State Title Company which is a member of the New York Board of Title Underwriters, will insure". And as observed by the majority, defendants produced such a company at the closing.

As we believe that neither party sustained the burden of establishing that their proffered interpretation is the only construction that can fairly be placed on the document *(see,* 22 NY Jur 2d, Contracts, § 189, at 25; *see also, Posner v United States Fid. & Guar. Co.,* 33 Misc 2d 653, 659, *affd sub nom. Posner v New York Mut. Underwriters,* 16 AD2d 1013), and because the determination of the intent of the parties rests on the credibility of extrinsic evidence *(see, Hartford Acc. & Indem. Co. v Wesolowski, supra),* we believe summary judgment is inappropriate at this time.

MAHONEY, P. J., and MIKOLL, J., concur with CASEY, J.; YESAWICH, JR., and HARVEY, JJ., dissent and vote to modify in an opinion by YESAWICH, JR., J.

Order affirmed, with costs.