■ MARY A. VAN VLEET et al., Respondents, v RHULEN AGENCY, INC., et al., Defendants, and RHULEN AGENCY, INC., a Division of MARKEL SERVICES, INC., Appellant.—Mikoll, J. P. Appeal from an order of the Supreme Court (Torraca, J.), entered February 22, 1991 in Sullivan County, which, *inter alia,* denied a cross motion by defendant Rhulen Agency, Inc. for summary judgment dismissing the complaint against it.

Plaintiffs seek to enjoin defendants from using the name "Rhulen" in their insurance business and for monetary damages for violation of restrictive covenants of an agreement between plaintiff Mary Ann Van Vleet and defendant Rhulen Agency, Inc., the predecessor of RAI Partners, Inc.[1] RAI Partners moved to dismiss plaintiffs' fourth cause of action in which plaintiffs contend that RAI Partners is in breach of the agreement between them by continuing to use the name of

---

1. Given RAI Partners' status as successor to Rhulen Agency, Rhulen Agency will hereinafter be referred to by its successor's name.

"Rhulen" in its insurance business.[2] Defendant Rhulen Agency, Inc., a division of Markel Services, Inc. (hereinafter Markel), cross-moved for dismissal of plaintiffs' complaint alleging that there was no privity of contract between it and plaintiffs with respect to the conduct of its insurance business and on the further ground that it had the exclusive right to use the name "Rhulen". Supreme Court denied both motions for summary judgment, finding that a trial was required. This appeal by Markel ensued.

Van Vleet purchased certain assets from RAI Partners, namely, the "personal lines business" portion of the latter's insurance business for $680,000 in an agreement dated February 17, 1989. The agreement included the following:

"1. ASSETS TO BE SOLD * * *

"b. The right for a period of five (5) years following the transfer date contemplated herein, to use the name(s) 'Van Vleet, Weisbord, Wells & Rhulen Associates' or any variation thereof, which use shall be limited to insurance business, together with all the goodwill, if any, attendant thereto. In the event Buyer wishes to use any variation of the aforesaid name which includes the word 'Rhulen', Buyer shall obtain Seller's consent in advance of such use, which consent Seller shall not unreasonably withhold. * * *

"17. SELLER'S COVENANTS * * *

"c. That for a period of five (5) years following the Transfer Date, Seller will not directly or indirectly, solicit, attempt to obtain, accept or in any fashion engage in the personal lines insurance business, including that of insurance agent, broker advisor, consultant or risk manager, except on behalf of the Buyer, within Sullivan County, New York, or within twenty-five miles from the borders thereof. In the event of the sale by Seller within such five-year period of all or any part of the remaining business of Seller not subject to the sale herein, Seller covenants and agrees to require any such purchaser to be subject to and bound by this covenant not to compete * * *

"f. In the event of a breach or threatened breach by the Seller, or by any subsequent purchaser as contemplated in subparagraph (c) above, of the provisions of this paragraph, the provisions of any paragraph may be enforced by an injunction restraining the Seller or such purchaser from the commission of such breach to the full extent hereof, or to such lesser extent as a court of competent jurisdiction may deem

---

**2.** RAI Partners made the same request pursuant to the fifth and sixth causes of action to the extent that they were based on the same allegation.

just and proper for the reasonable protection of the rights and interests of the Buyer. Nothing contained herein shall be construed as prohibiting the Buyer from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of money damages."

Subsequently RAI Partners sold assets to Markel on October 1, 1989, which included "all rights in and to use of the name 'Rhulen Agency, Inc.' in connection with the insurance brokerage and agency business". The following relevant language appears in this asset purchase agreement:

"1.2 *Excluded Assets.* * * * Buyer acknowledges that * * * Seller's Personal Lines Small Business Division * * * [has] been sold * * *

"2.9 *Tradenames, Trademarks, Patents and Similar Rights.* * * * Other than Seller's license to Mary Ann Van Vleet under the agreement relating to the sale of Seller's former Personal Lines Small Business Division, Seller has not licensed or otherwise assigned such tradenames to any third party and there are no existing infringing uses of such names by any third parties known to Seller or the Rhulen Shareholders."

The basic rule of contract construction is that where the terms of a written agreement are clear and unambiguous, the intent of the parties must be gleaned from the contract language *(Zion v Kurtz,* 50 NY2d 92, 105). When a contract contains ambiguous language and the issue is to be resolved on the basis of the agreement alone, without reference to extrinsic evidence, the issue is to be determined by the courts as a matter of law *(Olson Enters. v Agway, Inc.,* 55 NY2d 659, 661; *see, Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169, 172; *Future Sales v Fairfield Mall Ltd. Partnership,* 175 AD2d 483; *Hudson-Port Ewen Assocs. v Chien Kuo,* 165 AD2d 301, 303, *affd* 78 NY2d 944). In this case, the record indicates that interpretation of the two contracts does not depend on extrinsic evidence and, therefore, their interpretation is a matter of law for the court. Any ambiguity contained therein should be addressed with the focus in mind of "a practical interpretation of the expressions of the parties to the end that there be a 'realization of [their] reasonable expectations' " *(Brown Bros. Elec. Contrs. v Beam Constr. Corp.,* 41 NY2d 397, 400, quoting 1 Corbin, Contracts § 1, at 2; *accord, Hudson-Port Ewen Assocs. v Chien Kuo, supra,* at 303-304).

Prefactorily we address the legal question raised by Markel of lack of privity between the parties. As a general rule,

privity or its equivalent remains a predicate for imposing liability for nonperformance of contractual obligations *(see, Credit Alliance Corp. v Andersen & Co.,* 65 NY2d 536, 546). An obligation rooted in contract may engender a duty owed to those not in privity when the contracting party knows that the subject matter of a contract is intended for the benefit of others *(see, Strauss v Belle Realty Co.,* 65 NY2d 399, 402). An intention to benefit a third party must be gleaned from the contract as a whole *(see, MacPherson v Buick Motor Co.,* 217 NY 382, 393). Here, Van Vleet was named in the agreement between RAI Partners and Markel. The disposition of assets to Van Vleet was recognized in the instrument and the covenant of noncompetition, as well as her right to use the name "Rhulen" in the insurance business. We therefore conclude that the absence of privity does not bar Van Vleet's causes of action against Markel. Supreme Court therefore properly denied Markel's motion for complete dismissal of the complaint on the ground of lack of privity.

On the issue of exclusivity of the use of the name "Rhulen", we are prompted by a search for the expectations of the parties as expressed in the February 17, 1989 agreement. We find plaintiffs' contention that they were granted exclusive use of the name "Rhulen" not borne out by the language of the contract. Under that agreement the ownership of the name "Rhulen" remained with RAI Partners, the seller. A limited use of the name "Van Vleet, Weisbord, Wells & Rhulen Associates", or a variation thereof, was accorded to Van Vleet, the buyer, for a five-year term. The agreement did not grant exclusive use of the name. RAI Partners retained control of the name and variations thereof. Having accepted a limited use of the name upon terms dictated by RAI Partners, plaintiffs cannot assert exclusive ownership thereof against RAI Partners as successors to Rhulen Agency *(see, Norden Rest. Corp. v Sons of Revolution in State of N. Y.,* 51 NY2d 518, 522, *cert denied* 454 US 825). The subsequent grant, a mere several months later, to Markel recognized plaintiffs' limited entitlement to the use of "Rhulen". This is in conformity with the February 17, 1989 contractual arrangement with Van Vleet to allow use of the Rhulen name to her personal lines business. Supreme Court, therefore, should have granted RAI Partners' motion in its entirety and Markel's cross motion to the extent that plaintiffs asserted exclusive rights against Markel for the use of the name "Rhulen".

Yesawich Jr., Crew III and Harvey, JJ., concur. Ordered that the order is modified on the law, without costs, defen-

dants' motions for summary judgment granted to the extent of dismissing the fourth cause of action as well as those portions of the fifth and sixth causes of action seeking the same relief, and, as so modified, affirmed.