In re ILANA REALTY, INC., Debtor.

**SHORT CLOVE ASSOCIATES, INC., Appellant,**

v.

**ILANA REALTY, INC., et al., Appellees.**

No. 91 B 21407.
Adv. No. 91 ADV 6200A.
Nos. 92 Civ. 6105 (GLG),
92 Civ. 6106 (GLG).

United States District Court,
S.D. New York.

March 15, 1993.

McCarthy, Fingar, Donovan, Drazen & Smith, White Plains, NY (William F. Macreery, Robert M. Redis, Marianne M. Acito, of counsel), for plaintiff Short Clove Associates.

Gerarld Zisholtz, Mineola, NY, Jeffrey L. Sapir. White Plains, NY, for defendant Ilana Realty.

McCullough, Goldberger & Staudt, White Plains, NY, for defendant McCullough, et al.

## MEMORANDUM DECISION

GOETTEL, District Judge.

This bankruptcy appeal stems from a real estate transaction in which the appellant Short Clove Associates, Inc. sought to purchase from appellee Ilana Realty, Inc. a property located in Haverstraw, New York. The land to be sold included on it several buildings and improvements. The purchase price was $2.5 million. Short Clove, the buyer, paid into escrow a $125,000 deposit. The closing date was set for 60 days after the contract of sale was executed. After several delays, Ilana made time of

the essence and a closing date was set for May 15, 1990.

At the closing, Ilana demanded the certified check for the balance due; Short Clove's title company advised the parties that the exceptions identified in its report had not been removed. The closing of the deal did not occur. Shortly after, Short Clove maintained that Ilana had breached its contractual obligations and demanded return of its downpayment.

After its demand was refused, Short Clove brought suit against Ilana in New York State Supreme Court to recover its downpayment and the interest earned. Before trial, Ilana filed in bankruptcy under Chapter 11. Short Clove commenced an adversary proceeding against Ilana and the escrow agent holding its deposit seeking a declaratory judgment and recovery of its downpayment based upon Ilana's alleged breach of the contract of sale. Ilana counterclaimed for damages alleging that Short Clove had breached the contract by refusing to close title.

A trial was held before the Bankruptcy Court, Hon. Judge Schwartzberg presiding. On March 24, 1992, following the trial's conclusion, the Bankruptcy Court rendered a decision from the bench in favor of Ilana, holding that the Seller had tendered marketable title and was entitled to damages for Short Clove's breach of contract.

On April 6, 1992, the Bankruptcy Court denied Short Clove's motion to amend its decision or in the alternative for a new trial. On April 23, 1992, an Order was entered dismissing Short Clove's complaint, directing delivery of the downpayment to Ilana, and entering judgment on Ilana's counterclaims against Short Clove in the amount of $551,000 plus costs. As directed by the Order, a separate judgment was then entered against Short Clove awarding Ilana $551,000 plus costs. Short Clove appealed challenging both the Order and subsequent judgment. On May 18, 1992, the Bankruptcy Court granted a stay pending appeal of the April 23rd Order.

On the present appeals, Short Clove makes several arguments: 1) the Bankruptcy Court erroneously refused to find that Ilana had breached the contract by tendering a title that was neither marketable nor insurable; 2) that the Court also erred in treating marketability and insurability as issues of evidence instead of questions of law; and 3) the Court erred as a matter of law in awarding Ilana both liquidated damages under the contract and additional damages on its counterclaims for breach of contract.

On appeal, Ilana responds that the Bankruptcy Court correctly found that Short Clove had breached the contract, and failed to establish a prima facie case of entitlement to return of the deposit by failing to prove that it was ready, willing, and able to complete its purchase by tendering a certified check for the balance owed. Short Clove responds that under New York law, where the seller is unable to deliver marketable title, the purchaser need not tender payment. *See Greene v. Barrett, Nephews & Co.*, 238 N.Y. 207, 144 N.E. 503 (1924); *Cohen v. Kranz*, 12 N.Y.2d 242, 246–27, 238 N.Y.S.2d 928, 189 N.E.2d 473 (1963).

As all sides recognized during the adversarial proceeding below, the crux of the case is the marketability of title. If title was marketable, Short Clove breached the contract by failing to tender payment. If title was unmarketable, Ilana failed to abide by its contractual obligation to deliver marketable title. On appeal, appellants raise the issue of insurability as a grounds for reversal. Under New York law, there is a distinction between marketable title and insurable title. *Hudson–Port Ewen Associates, L.P. v. Chien Kuo*, 165 A.D.2d 301, 566 N.Y.S.2d 774 (3rd Dep't), *aff'd*, 78 N.Y.2d 944, 573 N.Y.S.2d 637, 578 N.E.2d 435 (1991). During the trial below, appellants repeatedly stated that marketability formed the only issue in the case. The Bankruptcy Court agreed, without objection. Therefore, as a preliminary matter, any arguments on appeal concerning the title's insurability will not be considered since they were not presented to the Bankruptcy Court.[1]

---

**1.** Moreover, the evidence in the trial record bearing on this issue supports only a finding of

Thus, the appeal turns on the Bankruptcy Court's finding that marketable title was tendered to Short Clove. Ilana contends that the alleged defects in title which supposedly defeated marketability were all explicitly covered by provisions of the contract of sale. In short, Ilana stresses that the Bankruptcy Court properly concluded that Short Clove, rather than intending to tender full payment, was speculating on the real estate deal that fell through and now raises a marketability smokescreen to avoid the consequences of its default.

Short Clove responds that even if a small portion of the property is unmarketable, the purchaser is entitled to a return of its downpayment. *See Rosenberg v. Centre Davis Corp.*, 209 N.Y.S.2d 19 (1960), *aff'd,* 15 A.D.2d 506, 222 N.Y.S.2d 391 (2d Dep't 1961). Under this approach, Short Clove must show that at least some part of the property is unmarketable, meaning that the intended and announced use of that portion was undermined by defects in title.

At the conclusion of the trial, the Bankruptcy Court held:

> The sole and basic issue here is whether or not this was marketable title on May 15, 1990. The only evidence in this case which is unrefuted is by Mr. Krieger that this was marketable title ... basically the only evidence of marketability.

Tr. at 84.

Without any identifiable plan to development of the property, it seems impossible to hold that any of the encroachments render anything unmarketable by definition.

### A. Standard of Review

■ At the outset, we note that a Bankruptcy Court's judgment shall not be set aside unless found to be clearly errone-

ous. In particular, Bankruptcy Rule 8013 states:

> On an appeal the district court ... may affirm, modify or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness.

Thus, even if we would have reached a contrary factual conclusion, we will not reverse the Bankruptcy Court unless its factual findings are "clearly erroneous." *See In re Vienna Park Properties*, 125 B.R. 84 (S.D.N.Y.1991). A finding of fact is clearly erroneous when, after reviewing the evidentiary record, we are "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We review its conclusions of law "de novo." *See In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir.1988); *In re Chateaugay Corp.*, 104 B.R. 637 (S.D.N.Y.1989).

### B. Marketability of Title

Short Clove's primary argument on appeal is that the existence of various easements, encroachments, etc. rendered the title unmarketable as a matter of law. And since Ilana did not tender a marketable title, it breached the contract.

■ "The test of whether a title is marketable is whether the purchaser can peacefully enjoy and use the property for his intended and announced purposes." *DeJong v. Mandelbaum*, 122 A.D.2d 772, 505 N.Y.S.2d 659, 661 (2d Dep't 1986). Put another way, marketability rests on wheth-

---

insurability. The contract of sale identifies marketability, not insurability, as a prerequisite. Further, the only witness called by the appellant at the trial, Jeffrey L. McCall, the President of Short Clove's title company, expressly stated, "I didn't refuse to insure the title. I would insure the title excepting to those rights as disclosed in the title report." Tr. at 34. The expert witness called by Ilana agreed. He stated that "as Mr. McCall pointed out, title is certainly insurable. It's insurable subject to what's contained in the

report." *Id.* at 44. Indeed, as appellant's counsel noted during his cross-examination of Ilana's expert, "This issue here is marketability." *Id.* at 52. He repeated his assertion later during cross-examination when he noted that "[w]e're not dealing with insurability; we're dealing with marketability." *Id.* at 62. The record is abundantly clear and undisputed; if insurability was an issue, the court could only conclude on the evidence before it that the title was insurable.

er there is an objection to title which would interfere with a sale or with the market value of a property. *See Regan v. Lanze,* 40 N.Y.2d 475, 387 N.Y.S.2d 79, 83, 354 N.E.2d 818, 822 (1976). Marketability does not assure a buyer a title free from every doubt, or even every encroachment. Rather, it shields the buyer from defects in title that are more than simply possible or very remote. *Id.*

■ Moreover, easements and encroachments, particularly when they are open and notorious, do not automatically render title unmarketable. *Whitman v. Larson,* 172 A.D.2d 968, 568 N.Y.S.2d 485 (3rd Dep't 1991). If they are visible, open and notorious, a buyer is presumed to purchase the land subject to them. *Id.* 568 N.Y.S.2d at 487.

■ The extent to which the easements and encroachments identified by appellant infringed upon the property's marketability involves a factual assessment of their impact on the planned use of the property coupled with an examination of their express identification in the contract of sale. We might thus call marketability a mixed question of fact and law.

As we highlighted, the Bankruptcy Court held that Ilana tendered marketable title to Short Clove at the May 15, 1990 closing. As an evidentiary matter, the court rested its holding on the fact that nothing in the record disputed the testimony of Ilana's expert witness that despite the enumerated exceptions by the title company, title was marketable.

As a formal matter, the Bankruptcy Court was indeed correct. The only direct evidence in the record on the issue of marketability of title was Krieger's statement that title was marketable. However, there was evidence in the record from which a factfinder might infer unmarketability. The report submitted by Short Clove's title company was made a part of the Bankruptcy Court's record. In paragraph 25, it describes a host of easements, restrictive covenants, and encroachments.

Reviewing the Bankruptcy Court's findings, we cannot say that its determination that the various encroachments listed in the title report do not render the title unmarketable was erroneous as a matter of law. The scant evidence before the court below included the deposition of Short Clove's owner/President Ned Besso. While seeking potential investors in the Haverstraw property, Besso expressly stated that Short Clove had no particular development plans for the property, other than its purchase simply as a gamble. The following colloquy is illustrative:

Q: What were the purposes that you told them [potential investors]?

Besso: No, no purpose at all. Just buying a piece of land. We are gambling on it.

Q: What were you going to gamble on?

Besso: A good piece of land.

Q: Were you gambling on developing the land?

Besso: We had nothing in mind.

Q: You had nothing at all in mind?

Besso: No.

Besso Dep. at 32–33. Later in his deposition, Besso conceded the absence of any plans or even knowledge of the type of development would be suitable or possible for the property:

Q: Do you have any idea as to how this land can be developed if you wanted to develop it?

Besso: No.

Q: Do you have any idea as to whether or not this land is unsuitable for any use?

Besso: I don't know that.

    *    *    *    *    *    *

Q: You had no plans for developing the property anyway, is that right?

Besso: That's right.

Besso Dep. at 43–44.

■ The title report and portions of the testimony at trial certainly indicate the presence of various encroachments upon the Haverstraw property. Appellants argue on appeal that this undisputed evidence requires a reversal of the Bankruptcy Court's finding of marketability. We disagree. As Ilana's expert pointed out at trial, and as we noted above, the question

of title marketability cannot be divorced from an assessment of the intended use of the title property.

Appellant stresses that if some portion of the property is unmarketable, a purchaser may withdraw from the purchase of the entire property. This may be true. However, one still cannot assess the marketability of even a smaller portion of the property without some indication of its intended use by the purchaser. For example, the 10–foot wide easement that runs across the northern edge of the Haverstraw property might create an unmarketable area along the path of the easement for some limited purposes.

Short Clove's sole witness, the President of its title company, did testify that the exceptions noted in its title report created restrictions on the use of the property. Tr. at 33, 38. In particular, when questioned on cross-examination about the 10–foot wide easement across the northern boundary, Mr. McCall offered his opinion that it burdened the use of the property. *Id.* at 34. Undoubtedly, all easements by definition burden the underlying property to some degree. However, the crucial question on the issue of marketability is whether these burdens interfered or could potentially interfere with the intended use of the property.

With absolutely no evidence of any announced or intended plans to develop the property, or even any subdivision of it, the Bankruptcy Court correctly found itself unable to say that title unmarketability had been proven by mere proof of the existence of various encroachments.[2] In short, there was no way for the Bankruptcy Court to issue of finding of unmarketability without relying upon mere unsupported possibility.

That is not to say that in certain cases, the nature of a particular encroachment alone could by definition create title unmarketability. As appellant hypothesizes, if a prior easement cut directly through the heart of a property, it might in some circumstances render any development impossible. Such a situation, however, is factually inapposite to the case at bar. Indeed, Ilana's President, David Kwilecki, testified that Ilana was in the midst of developing the property itself by building over two hundred condominium units. Tr. at 73. This only bolsters the Bankruptcy Court's determination that title marketability existed.

At best, unmarketability remained a theoretical possibility, perhaps lurking on the horizon for someone's future development plans, but utterly unproven on the factual record before the Bankruptcy Court. Further, there is no evidence in the record that any of the encumbrances listed in the title report had any impact on the market value of the Haverstraw property. *See Regan,* 387 N.Y.S.2d at 83. In sum, we decline to reverse the Bankruptcy Court's finding of marketability, a conclusion founded upon factual determinations and the express provisions of the contract.

### C. Damages

Short Clove's second major argument on appeal is the issue of double damages. As we stated earlier, Short Clove contends that the Bankruptcy Court erred in awarding both liquidated damages under the contract and additional damages pursuant to Ilana's breach-of-contract counterclaims. Short Clove essentially claims that once Ilana elected liquidated damages it waived its right to seek added damages in court and that certain items included within the

---

**2.** We also observe that the record would support a conclusion by the Bankruptcy Court that many of the encroachments—for example, a 10–foot wide right-of-way across the northern edge and a 2.1 foot encroachment by an adjacent frame dwelling—were either minimal while others might reasonably be considered open and notorious encumbrances presumptively accepted by the purchaser, notwithstanding the fact that Mr. Besso did not bother to inspect or even visit the property before signing the contract of sale. *See* Besso Dep. at 28–29.

Additionally, we note that the final paragraph in Schedule A of the contract of sale expressly stated that the property sold to Short Clove was "BEING AND INTENDED TO BE the same premises conveyed by New York Job Development Authority and United States Small Business Administration as grantor to Ilana Realty, Inc. as grantee by Deed dated January 15, 1987." It is apparent, therefore, that Short Clove was on explicit notice that it was purchasing the same premises Ilana had originally received, no more, no less.

additional damages awarded were improper themselves. Ilana responds that the additional damages were warranted because Short Clove's litigation over the contract created added injuries for Ilana. In other words, by refusing to simply default and walk away, Short Clove vitiated the liquidated damages clause.

This issue is clearly a question of law. The Bankruptcy Court held that Short Clove had offered no evidence refuting the existence of damages stemming from Ilana's counterclaims. Short Clove argued that since the contract of sale was in evidence, it should be able to argue the matter on summation. Rejecting this, the court awarded $551,000 in damages on the counterclaim.

The liquidated damages clause in the contract of sale is found in paragraph 6 of the Rider to the Contract of Sale. It reads:

6. LIQUIDATED DAMAGE CLAUSE: If the purchaser willfully defaults or willfully fails to carry out any of the provisions of this agreement, the seller can elect to cancel the same, and fifteen (15) days after mailing written notice of such election to the purchaser or his attorney at their last known address, or personal delivery of such notice to the purchaser, this agreement shall become null and void and of no effect, and the seller shall retain all monies paid thereunder as liquidated damages, the same as if the agreement had never been made, or in the alternative, the seller shall have the right to bring any proceeding or action which he may deem necessary to protect his interest and afforded to him by law.

By letter dated March 21, 1990, Ilana informed Short Clove of its intention to invoke the liquidated damages provision.

The liquidated damages clause is relatively clear. In the event of a breach, the seller may retain the downpayment as liquidated damages "or in the alternative," pursue legal action to "protect his interest." Courts have held that invoking a liquidated damages provision waives a party's right to pursue additional contractual damages. *See, e.g., Smith v. Putnam,* 145 A.D.2d

383, 535 N.Y.S.2d 725, 727 (1st Dep't 1988); *Andesco, Inc. v. Page,* 137 A.D.2d 349, 530 N.Y.S.2d 111, 115 (1st Dep't 1988).

In *Smith,* the court held that "[a] contract provision for liquidated damages controls the rights of the parties in the event of breach, notwithstanding that the stipulated sum may be less than the actual damages allegedly sustained." 145 A.D.2d 383, 535 N.Y.S.2d at 727. So long as the contract of sale contained a legally enforceable liquidated damages clause, and appellee has not challenged it, actual damages are not an issue and a party is limited to the damage amount agreed to in the contract. *See X.L.O. Concrete Corp. v. John T. Brady & Co.,* 104 A.D.2d 181, 482 N.Y.S.2d 476, 479 (1st Dep't 1984).

In arguing the propriety of the Bankruptcy Court's award of damages on the counterclaims, appellees cite *Walter E. Heller & Co. v. American Flyers Airlines Corp.,* 459 F.2d 896 (2d Cir.1972). That case, however, has little to do with issue before this court, namely whether the Bankruptcy Court could award damages beyond the amount agreed upon in a liquidated damages provision.

In *American Flyers,* a district court had awarded $250,000 in liquidated damages and the party against whom the judgment was entered challenged the soundness of the liquidated damages clause itself arguing that it was, in realty, an unenforceable penalty. The Second Circuit stated that when assessing a liquidated damages award it was immaterial whether the actual damages suffered were higher or lower than the sum specified in the clause. *Id.* at 899. It held that "under New York law a contractually agreed upon sum for liquidated damages will be sustained where (1) actual damages may be difficult to determine and (2) the sum stipulated is not 'plainly disproportionate' to the possible loss." *Id.*

Here, appellants have not challenged the validity of a liquidated damages clause, but rather the propriety of awarding damages over and above it. On appeal, Short Cloves is not arguing that the liquidated damages award is disproportionate. Indeed, it seeks

to enforce the liquidated damages provision. Hence, *American Flyers* seems inapplicable.

Our decision is informed by more applicable caselaw. As New York courts have held, "[t]he provision for liquidated damages in a contract specifically limits the amount recoverable *for the breach* no matter how occasioned nor to what extent the actual damage may be." *Estate of Richter v. Novo Corp.*, 43 A.D.2d 1, 349 N.Y.S.2d 101, 103 (1st Dep't 1973) (emphasis added); *see also Stone, Sand & Gravel Co. v. United States*, 234 U.S. 270, 279, 34 S.Ct. 865, 867, 58 L.Ed. 1308 (1913); *Trans World Airlines v. Travelers Indemnity Co.*, 262 F.2d 321, 325 (8th Cir.1959) (quoting 15 Am.Jur. § 264, Damages at 697); *Sulyok v. Penzintezeti Kozpont Budapest*, 279 A.D. 528, 111 N.Y.S.2d 75, 80 (1st Dep't 1952) ("Where a sum is stipulated as damages for the nonperformance of a contract, the injured party cannot recover beyond that sum *for a breach thereof.*" (emphasis added)).

■■■ It does not necessarily follow, however, that because a liquidated damages provision precludes pursuing recovery of contractual damages resulting from the breach that it bars all additional recovery. This is particularly true in the present case where the consequential damages were easily computed and indisputably proven. It is our conclusion that certain consequential damages related to the transaction, but not directly related to the breach of the contract of sale, are recoverable.[3]

In a colloquy with the Bankruptcy Court before it announced its decision, Short Clove expressly raised the issue of the liquidated damage provision, noting for the court that the contract of sale had been submitted as an exhibit into evidence by stipulation of the parties. Tr. at 81 and 82. Notwithstanding this, in addition to permitting Ilana to retain the $125,000 downpayment, the Bankruptcy Court granted Ilana over $500,000 in damages on its counterclaims.

There is no doubt that the record contained no evidence disputing the various amounts of additional damages claimed by Ilana on its counterclaims. As appellees point out, had Short Clove simply walked away from the deal, assuming it breached the contract, Ilana's sole avenue of recourse would have been the liquidated damages provision. However, Short Clove did more than simply refuse to close the sale; it commenced litigation, subjecting Ilana to a whole new panoply of expenses connected to its Haverstraw property, costs that were an indirect consequence of Short Clove's breach but not damages from the breach per se.

The uncontested record shows that Ilana's consequential damages included: $240,000 in interest on the property's mortgage accrued since the May 15, 1990 closing; $180,000 in taxes carried on the property since the closing; $34,000 in legal fees associated with the Contract of Sale and the closing; $50,000 in legal fees for defending a foreclosure proceeding; $7,500 in legal fees for bankruptcy counsel; and $40,000 in engineering expenses incurred after the closing associated with site plans for the development of the property.

■■■ As a general rule, consequential damages that do not arise out of the immediate transaction between the parties and were not reasonably foreseeable are not recoverable. *See 437 Madison Avenue Associates v. A.T. Kearney, Inc.*, 127 Misc.2d 37, 488 N.Y.S.2d 950, 951 (1st Dep't 1985). At the outset, we question the damages award of $40,000 for an engineering report generated in connection with Ilana's subsequent development of its Haverstraw property. There is no particu-

---

**3.** We also note that courts applying their equitable powers have limited a party's recovery to actual damages where an award of liquidated damages would be disproportionate to the damages suffered by that party and thus act as a penalty. *See, e.g., Willner v. Willner*, 145 A.D.2d 236, 538 N.Y.S.2d 599, 601 (2d Dep't 1989); *J.R. Stevenson Corp. v. Cty. of Westchester*, 113 A.D.2d 918, 493 N.Y.S.2d 819, 823 (2d Dep't 1985). It would follow that a court is similarly empowered to use its equitable powers to award damages beyond the liquidated damages sum where the liquidated damages are disproportionately lower than the actual consequential damages incurred by a party as a result of another party's post-breach actions.

lar reason why such expenses would be an expected or foreseeable part of the transaction contemplated between Ilana and Short Clove. However, since the Bankruptcy Court made no findings regarding its award of $40,000 for engineering expenses we shall remand for further proceedings concerning this issue.

Likewise, we question the award of $34,000 in legal fees associated with the preparation of the Contract of Sale and the closing. The transformation of those expenses into damages was directly related to Short Clove's failure to close, *i.e.* its breach. Damages directly related to the failure to close itself would seem to be covered by the liquidated damages provision. On remand, the Bankruptcy Court should consider the liquidated damages provision incorporated into the Contract of Sale and decide whether these legal fees are also damages stemming from the breach.

As to the balance of the damages awarded, we find that they are chargeable against Short Clove. Short Clove's decision to tie up the property in litigation produced added costs for Ilana. The interest due, taxes accrued, and legal fees incurred are certainly a consequence of appellant's insistence on pursuing the matter in court after the closing fell through. These damages are not for the breach, but rather were incurred as a consequence of the breach and appellant's subsequent legal actions. Regarding the legal fees in particular, Ilana was forced to defend a state court action and seek shelter in bankruptcy under Chapter 11 only after Short Clove refused to close on the transaction.

To conclude, we affirm the Bankruptcy Court's order directing that the downpayment be delivered to appellee and, regarding the damages, we remand for further proceedings not inconsistent with this decision.

SO ORDERED.