**Albert M. GREENFIELD and Wendy M. Greenfield, Plaintiffs,**

v.

**Alan Robert SHAPIRO and Marion Greif, Defendants.**

**No. 99 Civ.4853(WCC).**

United States District Court, S.D. New York.

July 26, 2000.

judgment, it will not consider the County's second motion to dismiss, as it is now moot.

Lowen K. Hankin, P.C., Rye Brook, New York, Lowen K. Hankin, of counsel, for plaintiffs.

Law Offices of Richard I. Goldsand, Brewster, New York, Richard I. Goldsand, of counsel, for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

The instant action was commenced by Albert and Wendy Greenfield (plaintiffs) against Alan Shapiro and Marion Greif (defendants) seeking a $79,900 down payment after the parties failed to close on the purchase of plaintiffs' house. Plaintiffs now move pursuant to Fed.R.Civ.P. 56 for summary judgment. For the reasons that follow, plaintiffs' motion is granted.

## BACKGROUND

In the spring of 1998, plaintiffs listed their home at 40 Pond Hill Road in Chappaqua, New York (the "Property") with Holmes and Kennedy, a real estate brokerage firm in Chappaqua. Plaintiffs state that they provided Holmes and Kennedy with four different plans and surveys of the Property, including a topographical map, and made these plans available to prospective purchasers for inspection and photocopying. (A. Greenfield Aff. at ¶ 4.)

In July and August of 1998 defendants, accompanied by their broker Mary Ellen Bickler, made two inspection visits to the Property. Bickler states in her affidavit that the only map made available to her during her visits to the Property was a

topographical map. (Bickler Aff. at ¶ 4.) Bickler admitted during her deposition that she did not know how to read the map. (Bickler Dep. at 206.) Defendant Greif also stated during her deposition that she saw the topographical map, but did not understand it. (Greif Dep. at 181.) Bickler said that she attempted to find a survey of the Property at the Town of Newcastle Town Hall, but there was no such survey available. (Bickler Dep. at 186.)

On August 11, 1998, plaintiffs and defendants entered into a written contract of sale (the "Contract") pursuant to which plaintiffs agreed to sell the Property to defendants for $799,000. At the signing of the Contract, defendants delivered a downpayment of 79,900, which was to be held in escrow by plaintiffs' then-counsel Susan Gulotta. The Contract provided: "If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages...." (A. Greenfield Aff., Ex. A, ¶ 23(a).) During the negotiation of the terms of the Contract, defendants were represented by the law firm of Banner and Greif, but prior to the closing date, defendants changed attorneys to Ian Polow.

Shapiro states that he told Albert Greenfield that having a large pool in a private backyard was Greif's *"sine qua non* in selecting a home," and that during a visit to the Property, Albert Greenfield told him that the rear boundary line extended "'way back into the woods.'" (Shapiro Aff. at ¶ 3.) According to Shapiro, on a subsequent visit to the Property, Albert Greenfield escorted him into the woods beyond the cleared backyard to show him how deep into the woods the property line purportedly extended. (*Id.* at ¶ 5.) Greif states that she discussed with Wendy Greenfield her desire to build a swimming pool in the backyard, and that Albert Greenfield agreed with her that the backyard would be a perfect place for a pool. (Greif Aff. at ¶ 3.)

Greif states that ten days after the Contract was executed, she met with a contractor to design a swimming pool to be built in the backyard of the Property. (Greif Aff. at ¶ 4.) However, the contractor told her that it appeared to him that about one-half of the area she believed constituted the backyard was not part of the property to be conveyed to them. (*Id.*) Grief and Bickler then met with plaintiffs' surveyor, who confirmed what the contractor had told Greif. (*Id.* at ¶ 5.) Bickler states in her affidavit that the area Albert Greenfield described as the Property's backyard was dissected by a boundary line that cut the purported backyard in half. (Bickler Aff. at ¶ 8.)

In the Contract, the parties agreed that the closing would take place at 10 a.m. "[o]n or before 8/31/98" in Gullotta's offices. (A. Greenfield Aff., Ex. A, ¶ 15.) On August 27, 1998, Polow wrote to Gullotta requesting that the closing be adjourned for a month to allow title searches to be completed and to allow time for a new survey of the Property. (Complt., Ex. B, Letter from Polow to Gullotta of 8/27/98.) After Polow objected to a closing date of September 30, Gullotta wrote to Polow that the closing would be adjourned to October 5, 1998 with "time of the essence," and that her clients would be "ready, willing and able to transfer insurable title to the premises" to defendants. (*Id.*, Ex. F, Letter from Gullotta to Polow of 9/29/98.) There was no closing on October 5, although Gullotta stated on the record that she had, ready to tender to defendants, a bargain and sale deed transferring title to the Property from plaintiffs to defendants and other closing documents. (A. Greenfield Aff., Ex. B.)

By letter dated June 9, 1999, Lowen Hankin, acting as counsel for plaintiffs, demanded delivery of the downpayment to plaintiffs. (Complt., Ex. G, Letter from Hankin to Gullotta of 6/9/99.) On August 3, 1999 defendants instituted an action in Supreme Court, Westchester County

against plaintiffs, Gullotta as escrow agent, and Polow.

Wendy Greenfield states that "[a]t no time during their inspections of the Property, or prior to the execution of the Contract of Sale, did the Defendants ever ask me or my husband about the location for construction of a swimming pool at the Property, or otherwise indicate to us that their interest in purchasing the Property was pre-conditioned on their ability to construct a swimming pool at any particular location on the Property." (W. Greenfield Aff. at ¶ 11.) Gullotta also states in her affidavit that she was not advised of defendants' swimming pool condition prior to execution of the Contract. (Gullotta Aff. at ¶ 15.) Defendants' former counsel, Polow, testified that he was not advised that the construction of a swimming pool at a particular location on the Property was of importance to defendants. (Polow Dep. at 128.)

## DISCUSSION

### I. Summary Judgment Standard

Plaintiffs move for summary judgment pursuant to Fed.R.Civ.P. 56. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issues of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law dictates which facts are material. *See* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all reasonable inferences against the movant. *See id.* The court's role at this stage of the litigation is not to decide genuine issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994).

### II. Plaintiffs Are Entitled to the Downpayment

■ A buyer who defaults on a real estate contract without lawful excuse cannot recover the downpayment. *Barton v. Lerman*, 233 A.D.2d 555, 556, 649 N.Y.S.2d 107 (N.Y.App.Div.1996); *Graubard Mollen Dannett Horowitz Shapiro and Pomeranz v. Madison Invs., Inc.*, 173 A.D.2d 386, 570 N.Y.S.2d 16 (N.Y.App.Div.1991). However, defendants herein claim that plaintiffs are not entitled to the downpayment as plaintiffs induced them to sign the Contract by fraudulently misrepresenting the Property's boundary line. Defendants claim that plaintiffs defrauded them by providing defendants with a "mostly illegible" photocopy of a topographic map and "visual evidence of a false backyard boundary line" in that: (1) plaintiffs pointed to the area where the false boundary line was in the presence of defendants and their broker; (2) Albert Greenfield walked the false boundary line with defendant Shapiro; (3) plaintiffs cut the grass and maintained the area within the false boundary line to create the illusion of a larger backyard than existed on the property to be sold to defendants; (4) plaintiffs placed a trampoline and a swing set beyond the true boundary line; and (5) plaintiffs did not affirmatively represent the true boundary line to defendants. (Defs.' Mem.Law Opp.Summ.J. at 1.)

## A. The Effect of the Merger Clause

As an initial matter, plaintiffs contend that the Contract contained a merger clause which bars this Court from considering parol testimony as to defendants' contention that plaintiffs misrepresented the Property's boundary line to defendants. The Contract provided that "[a]ll prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract." (A. Greenfield Aff., Ex. A, ¶ 28(a).)

■ As a general matter, representations or warranties made prior to the execution of a written contract for the purchase of real property are merged therein and may not be proved by oral testimony. See, e.g., Strauss v. Abraham Levitt & Sons, 244 A.D. 739, 740, 278 N.Y.S. 953 (N.Y.App.Div.1935). However, it is well-settled New York law that "a general merger clause is ineffective to exclude parol evidence of fraud in the inducement in an action to rescind the contract." DiFilippo v. Hidden Ponds Assocs., 146 A.D.2d 737, 537 N.Y.S.2d 222 (N.Y.App.Div.1989); see also Schooley v. Mannion, 241 A.D.2d 677, 678, 659 N.Y.S.2d 374 (N.Y.App.Div. 1997). Accordingly, defendants in the instant case are not barred by the Contract's merger clause from introducing evidence of fraud in the inducement.

## B. Fraud in the Inducement

■ To make out a defense of fraud, a party must demonstrate that "a material representation, known to be false, has been made with the intention of inducing its reliance on the misstatement, which caused it to reasonably rely on the misrepresentation, as a result of which it sustained damages." First Nationwide Bank v. 965 Amsterdam, Inc., 212 A.D.2d 469, 470–71, 623 N.Y.S.2d 200 (N.Y.App.Div. 1995); see also McGovern v. T.J. Best Bldg. and Remodeling, Inc., 245 A.D.2d 925, 926, 666 N.Y.S.2d 854 (N.Y.App.Div. 1997). In the instant case, we need not address whether plaintiffs misrepresented the Property's boundary to defendants, as defendants' reliance on such a representation, as a matter of law, would not be reasonable.

■ "If the facts represented are not peculiarly within the representor's knowledge and the other party has the means available to him of knowing by the exercise of ordinary intelligence the truth or real quality of the subject of the representation he must make use of those means or he will not be heard to complain that he was induced to enter the transaction by misrepresentation." DiFilippo, 146 A.D.2d at 738, 537 N.Y.S.2d 222; see also Dunkin' Donuts of Am., Inc. v. Liberatore, 138 A.D.2d 559, 560, 526 N.Y.S.2d 141 (N.Y.App.Div.1988).

■ The fact allegedly misrepresented by plaintiffs, the boundary line of the property to be sold, was not within the peculiar knowledge of plaintiffs and could have been ascertained by defendants by the means available to them by the exercise of reasonable diligence. See Eisenthal v. Wittlock, 198 A.D.2d 395, 396, 603 N.Y.S.2d 586 (N.Y.App.Div.1993) (purchasers could not establish reasonable reliance on seller's representation as to boundaries of real property); O'Dell v. Ginsberg, 253 A.D.2d 544, 677 N.Y.S.2d 583, (N.Y.App. Div.1998) (purchaser precluded from bringing misrepresentation claim as to size of property to be sold, as "such facts in a case relating to the sale of property are not peculiarly within the seller's knowledge").

In the instant case, defendants were sophisticated individuals who had retained the services of a broker and an attorney. Defendants' broker, Bickler, had access to a topographical map of the Property prior to the execution of the Contract, but as Bickler admitted during her deposition, she did not know how to read it. Howev-

540

er, a contractor engaged by defendants to design a swimming pool on the Property was able to determine, using the map supplied to defendants by plaintiffs, that the backyard did not extend as far as defendants claim they were led to believe it did. Following this discovery, defendants' broker contacted plaintiffs' surveyor to determine where the boundary lay.

Clearly, defendants could have determined the position of the rear property line and whether there was sufficient space to construct a swimming pool in the backyard prior to execution of the Contract. A contractor was able to make this determination from a map defendants admit was supplied to them before they signed the Contract. Defendants contend that the map was illegible, but there was nothing to stop them from contacting the surveyor who created the map before the Contract was signed, as indeed they did after the Contract was executed.

■ The rule of caveat emptor is subject to exception in New York in certain narrow circumstances where the seller had a duty to disclose a material fact known to the seller, but unknown to the buyer. *See, e.g., Scharf v. Tiegerman,* 166 A.D.2d 697, 698, 561 N.Y.S.2d 271 (N.Y.App.Div.1990) (sellers had duty to disclose that city was contemplating revocation of house's nonconforming status as three-family dwelling); *Stambovsky v. Ackley,* 169 A.D.2d 254, 260, 572 N.Y.S.2d 672 (N.Y.App.Div. 1991) (purchaser relieved of obligations under contract to purchase house where seller failed to disclose house's reputation for being haunted). However, in a case such as this, where defendants had the means and the opportunity to discern the truth of plaintiffs' representations, defendants are bound by the bargain they struck.

### C. *Liquidated Damages*

■ A contract provision for liquidated damages controls the rights of the parties in the event of a breach. *Smith v. Putnam,* 145 A.D.2d 383, 385, 535 N.Y.S.2d 725 (N.Y.App.Div.1988). Here,

defendants failed to appear and close title on October 5, 1998 in accordance with Gullotta's letter to Polow of September 20, 1998, which clearly and unequivocally notified defendants that plaintiffs were ready, willing and able to convey marketable title and that time was of the essence. Accordingly, plaintiffs are entitled to the $79,900 escrow fund, representing defendants' downpayment, as liquidated damages. *See Graubard Mollen Dannett Horowitz Shapiro and Pomeranz v. Madison Invs., Inc.,* 173 A.D.2d 386, 570 N.Y.S.2d 16 (N.Y.App. Div.1991).

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is granted. The Clerk of the Court shall enter judgment for plaintiff.

SO ORDERED.