Vito J. Titone, J.
In these two real property actions tried jointly by the court, plaintiffs, Donald P. Ericksen and his wife, Rita Ericksen, and plaintiffs, Philip Haberman and his wife, Lenora Haberman, originally sought rescission in connection with their purchase of a duplex, 34-36 Fieldway Avenue, Staten Island, New York. Subsequently they withdrew their claims for rescission but continued their suits for damages.
The thrust of the plaintiffs’ claims is that the corporate defendant and the individual defendants breached the contracts of sale by constructing the foundation of the duplex on piles that were unable to carry the weight of the foundation and superstructure, in violation of the Building Code (Administrative Code of City of New York, § C26-100.1 et seq.), that defendants became aware of such facts when cracks appeared in the foundation, and that to conceal such evidence from the plaintiffs, the defendants inter alia erected plasterboards in the basements to cover the cracks.
In order to try to hold defendants Greenspan and Jacobsen, sole stockholders and directors of the defendant corporation, plaintiffs allege that they actively participated in and directed the erection of the plasterboards so as to conceal the massive cracks and fissures in the foundation from the plaintiffs.
[Factual material omitted.]
It is true, as defendants’ attorneys assert, that normally there is no confidential or fiduciary relationship between a seller and a purchaser, and that the mere silence or nondisclosure by the seller of a material fact is not fraud (see Moser v Spizzirro, 31 AD2d 537, affd 25 NY2d 941). However, the evidence in this case demonstrates, almost beyond a reasonable doubt, that the individual defendants, and the corporate *265 defendant by such individuals, were aware that the foundation was constructed in violation of the Building Code, that it was totally inadequate to sustain the weight of the superstructure, and that the defendants engaged in concerted actions to conceal such material facts from the plaintiffs.
From the testimony adduced from both engineers, it is patently obvious that the piles for the foundation were evidently not driven to the required depth, that there was inadequate engineering supervision of the driving of the piles, that inaccurate and erroneous pile log statistics were filed with the Department of Buildings after the foundation was constructed, that massive fissures and cracks and severe settlement ensued as a result of such untoward actions, and that the massive fissures, cracks and water condition resulting from such defective construction, and the flanges and I-beams installed to try to hold the foundation together, were concealed and covered up by the erection of the plasterboard in the basement, all under the knowledge and direction of the individual defendants.
The rule that nondisclosure of facts normally does not constitute fraud, does not apply where there is • an active concealment of facts; and such concealment is a fraud. "Active concealment” has been defined as either a representation good as far as it goes, but accompanied with such a suppression of facts as makes it convey a misleading impression, or an attempt by one party to draw the other’s attention from a fact or to cover it from view. In the first case, the nondisclosure has the effect of either impliedly representing that the fact concealed does not exist or of rendering the facts disclosed absolutely false; in the second case, the conduct of the party outside of an actual representation, is a fraud on the other (17 CJS, Contracts, § 155, emphasis added).
Thus, active concealment sufficient either to vitiate a contract or entitle the defrauded person to collect damages, has been held to occur where (1) the seller of a boat before the sale took it from where it lay and placed it afloat in a dock to prevent the examination of the bottom which the seller knew to be unsound (Schneider v Heath, 3 Camp 506; and (2) where the seller of a log of mahogany turned it in order to conceal a hole (Udell v Atherton, 7 H & N 172).
"A statement or affirmation is not always necessary to constitute fraud; sometimes concealment of facts may be equally operative for that purpose * * * Very slight circum *266 stances in addition to any intentional concealment will make a case of fraud * * * If one party actually is, or may be likely to have been, aware of the other’s lack of knowledge of the facts, the duty of disclosure may arise * * * and where there are circumstances peculiarly or exclusively within the knowledge of one party, materially affecting the property, and he is or should be aware that the other party is dealing with him in ignorance of such factors or on the assumption of some other state of facts, it has been held that he is under a duty to disclose the truth as to all such material facts of which he knows or has reason to believe the other party to be ignorant, and a failure to do so vitiates the contract. This is especially true where the external appearances are such as to lull to rest any suspicion as to the existence of the facts concealed and to induce a belief in their nonexistence, or where the party acquainted with the facts deliberately endeavors to put obstacles in the way of the other party so as to prevent his learning the truth (91 CJS, Vendor & Purchaser, § 57, emphasis added).”
The court rejects as absurd, the argument of defendant Greenspan that even though he may have committed a fraud in erecting the plasterboards to conceal the cracked foundation, there is no proof that the plaintiffs would not have purchased the homes except for the presence of the plasterboard structures. It defies the mind to conjecture that plaintiffs would not have raised serious objections to the closing of title had they become aware beforehand of facts indicating that the foundation was literally coming apart, that the house would have a serious settlement problem years later, and that as a result, furniture would be rolling across the floors.
The court also rejects defendant Jacobsen’s assertion that he is not liable in fraud since he was not personally involved with the construction of the subject duplex, and had no knowledge of the facts upon which the plaintiffs’ allegation of fraud is based. The credible evidence adduced at the trial reveals that Greenspan and Jacobsen were the sole directors and stockholders of the defendant corporation, that they ran their construction operations out of a trailer located at the building site, that both were usually at the site during construction operations, and that Jacobsen handled the bookkeeping for the venture. From such evidence, the court infers that the construction operation was in fact a joint venture of Greenspan and Jacobsen, and that each had knowledge of the *267 essential details of such operation. The court rejects as unbelievable, the posture of Jacobsen that since his nose was continually buried in corporate books and ledgers (which Greenspan testified had been stolen during the previous 8 or 9 years), he did not see or hear any evil, and thus did not knowingly participate in or approve the shoddy construction set forth in the record. The fact that an individual is acting as an officer or agent of a corporation in selling real estate will not preclude him from being held liable for fraud as an individual (Baron v Bobroy, Inc., 11 AD2d 766).
The court is also constrained to hold that the actions of the individual defendants in obtaining loans from the defendant corporation totaling over $44,000, after the instant suits were commenced, are demonstrable proof that they used the corporate entity as a means to evade existing and future obligations, and to further their own rather than the corporation’s business (see: Rapid Tr. Subway Constr. Co. v City of New York, 259 NY 472, 488). To put it bluntly, from the facts adduced at the trial, the court concludes that the defendant corporation was purposely rendered judgment proof by the individual defendants, and its corporate entity was a mere facade, having a concrete reality somewhat akin to the purported foundation erected herein under the corporate name.
Accordingly, the court awards damages to cover the cost of repairing the foundation, in the sum of $12,750 to each set of plaintiffs, with interest from March 15, 1965, which approximately is the earliest ascertainable date that their causes of action existed (CPLR 5001, subd [b]).