Jeffrey M. Stambovsky, Appellant, v Helen V. Ackley et al., Respondents.

First Department, July 18, 1991

## APPEARANCES OF COUNSEL

*William M. Stein* of counsel *(Hood & Stein,* attorneys), for appellant.

*Andrew C. Bisulca* of counsel *(Mann, Mann & Lewis, P. C.,* attorneys), for Helen V. Ackley, respondent.

*Jeffrey J. Ellis* of counsel *(Quirk & Bakalor, P. C.,* attorneys), for Ellis Realty, respondent.

## OPINION OF THE COURT

RUBIN, J.

Plaintiff, to his horror, discovered that the house he had recently contracted to purchase was widely reputed to be

possessed by poltergeists, reportedly seen by defendant seller and members of her family on numerous occasions over the last nine years. Plaintiff promptly commenced this action seeking rescission of the contract of sale. Supreme Court reluctantly dismissed the complaint, holding that plaintiff has no remedy at law in this jurisdiction.

The unusual facts of this case, as disclosed by the record, clearly warrant a grant of equitable relief to the buyer who, as a resident of New York City, cannot be expected to have any familiarity with the folklore of the Village of Nyack. Not being a "local", plaintiff could not readily learn that the home he had contracted to purchase is haunted. Whether the source of the spectral apparitions seen by defendant seller are parapsychic or psychogenic, having reported their presence in both a national publication (Readers' Digest) and the local press (in 1977 and 1982, respectively), defendant is estopped to deny their existence and, as a matter of law, the house is haunted. More to the point, however, no divination is required to conclude that it is defendant's promotional efforts in publicizing her close encounters with these spirits which fostered the home's reputation in the community. In 1989, the house was included in five-home walking tour of Nyack and described in a November 27th newspaper article as "a riverfront Victorian (with ghost)." The impact of the reputation thus created goes to the very essence of the bargain between the parties, greatly impairing both the value of the property and its potential for resale. The extent of this impairment may be presumed for the purpose of reviewing the disposition of this motion to dismiss the cause of action for rescission (*Harris v City of New York*, 147 AD2d 186, 188-189) and represents merely an issue of fact for resolution at trial.

While I agree with Supreme Court that the real estate broker, as agent for the seller, is under no duty to disclose to a potential buyer the phantasmal reputation of the premises and that, in his pursuit of a legal remedy for fraudulent misrepresentation against the seller, plaintiff hasn't a ghost of a chance, I am nevertheless moved by the spirit of equity to allow the buyer to seek rescission of the contract of sale and recovery of his down payment. New York law fails to recognize any remedy for damages incurred as a result of the seller's mere silence, applying instead the strict rule of caveat emptor. Therefore, the theoretical basis for granting relief, even under the extraordinary facts of this case, is elusive if not ephemeral.

"Pity me not but lend thy serious hearing to what I shall unfold" (William Shakespeare, Hamlet, Act I, Scene V [Ghost]).

■ From the perspective of a person in the position of plaintiff herein, a very practical problem arises with respect to the discovery of a paranormal phenomenon: "Who you gonna' call?" as a title song to the movie "Ghostbusters" asks. Applying the strict rule of caveat emptor to a contract involving a house possessed by poltergeists conjures up visions of a psychic or medium routinely accompanying the structural engineer and Terminix man on an inspection of every home subject to a contract of sale. It portends that the prudent attorney will establish an escrow account lest the subject of the transaction come back to haunt him and his client—or pray that his malpractice insurance coverage extends to supernatural disasters. In the interest of avoiding such untenable consequences, the notion that a haunting is a condition which can and should be ascertained upon reasonable inspection of the premises is a hobgoblin which should be exorcised from the body of legal precedent and laid quietly to rest.

It has been suggested by a leading authority that the ancient rule which holds that mere nondisclosure does not constitute actionable misrepresentation "finds proper application in cases where the fact undisclosed is patent, or the plaintiff has equal opportunities for obtaining information which he may be expected to utilize, or the defendant has no reason to think that he is acting under any misapprehension" (Prosser, Torts § 106, at 696 [4th ed 1971]). However, with respect to transactions in real estate, New York adheres to the doctrine of caveat emptor and imposes no duty upon the vendor to disclose any information concerning the premises (London v Courduff, 141 AD2d 803) unless there is a confidential or fiduciary relationship between the parties (Moser v Spizzirro, 31 AD2d 537, affd 25 NY2d 941; IBM Credit Fin. Corp. v Mazda Motor Mfg. [USA] Corp., 152 AD2d 451) or some conduct on the part of the seller which constitutes "active concealment" (see, 17 E. 80th Realty Corp. v 68th Assocs., — AD2d — [1st Dept, May 9, 1991] [dummy ventilation system constructed by seller]; Haberman v Greenspan, 82 Misc 2d 263 [foundation cracks covered by seller]). Normally, some affirmative misrepresentation (e.g., Tahini Invs. v Bobrowsky, 99 AD2d 489 [industrial waste on land allegedly used only as farm]; Jansen v Kelly, 11 AD2d 587 [land containing valuable minerals allegedly acquired for use as campsite]) or

partial disclosure *(Junius Constr. Corp. v Cohen,* 257 NY 393 [existence of third unopened street concealed]; *Noved Realty Corp. v A. A. P. Co.,* 250 App Div 1 [escrow agreements securing lien concealed]) is required to impose upon the seller a duty to communicate undisclosed conditions affecting the premises *(contra, Young v Keith,* 112 AD2d 625 [defective water and sewer systems concealed]).

Caveat emptor is not so all-encompassing a doctrine of common law as to render every act of nondisclosure immune from redress, whether legal or equitable. "In regard to the necessity of giving information which has not been asked, the rule differs somewhat at law and in equity, and while the law courts would permit no recovery of *damages* against a vendor, because of mere concealment of facts *under certain circumstances,* yet if the vendee refused to complete the contract because of the concealment of a material fact on the part of the other, equity would refuse to compel him so to do, because equity only compels the specific performance of a contract which is fair and open, and in regard to which all material matters known to each have been communicated to the other" *(Rothmiller v Stein,* 143 NY 581, 591-592 [emphasis added]). Even as a principle of law, long before exceptions were embodied in statute law *(see, e.g.,* UCC 2-312, 2-313, 2-314, 2-315; 3-417 [2] [e]), the doctrine was held inapplicable to contagion among animals, adulteration of food, and insolvency of a maker of a promissory note and of a tenant substituted for another under a lease *(see, Rothmiller v Stein, supra,* at 592-593, and cases cited therein). Common law is not moribund. *Ex facto jus oritur* (law arises out of facts). Where fairness and common sense dictate that an exception should be created, the evolution of the law should not be stifled by rigid application of a legal maxim.

The doctrine of caveat emptor requires that a buyer act prudently to assess the fitness and value of his purchase and operates to bar the purchaser who fails to exercise due care from seeking the equitable remedy of rescission *(see, e.g., Rodas v Manitaras,* 159 AD2d 341). For the purposes of the instant motion to dismiss the action pursuant to CPLR 3211 (a) (7), plaintiff is entitled to every favorable inference which may reasonably be drawn from the pleadings *(Arrington v New York Times Co.,* 55 NY2d 433, 442; *Rovello v Orofino Realty Co.,* 40 NY2d 633, 634), specifically, in this instance, that he met his obligation to conduct an inspection of the premises and a search of available public records with respect

to title. It should be apparent, however, that the most meticulous inspection and the search would not reveal the presence of poltergeists at the premises or unearth the property's ghoulish reputation in the community. Therefore, there is no sound policy reason to deny plaintiff relief for failing to discover a state of affairs which the most prudent purchaser would not be expected to even contemplate *(see, Da Silva v Musso,* 53 NY2d 543, 551).

The case law in this jurisdiction dealing with the duty of a vendor of real property to disclose information to the buyer is distinguishable from the matter under review. The most salient distinction is that existing cases invariably deal with the physical condition of the premises *(e.g., London v Courduff, supra* [use as a landfill]; *Perin v Mardine Realty Co.,* 5 AD2d 685, *affd* 6 NY2d 920 [sewer line crossing adjoining property without owner's consent]), defects in title *(e.g., Sands v Kissane,* 282 App Div 140 [remainderman]), liens against the property *(e.g., Noved Realty Corp. v A. A. P. Co., supra),* expenses or income *(e.g., Rodas v Manitaras, supra* [gross receipts]) and other factors affecting its operation. No case has been brought to this court's attention in which the property value was impaired as the result of the reputation created by information disseminated to the public by the seller (or, for that matter, as a result of possession by poltergeists).

■ Where a condition which has been created by the seller materially impairs the value of the contract and is peculiarly within the knowledge of the seller or unlikely to be discovered by a prudent purchaser exercising due care with respect to the subject transaction, nondisclosure constitutes a basis for rescission as a matter of equity. Any other outcome places upon the buyer not merely the obligation to exercise care in his purchase but rather to be omniscient with respect to any fact which may affect the bargain. No practical purpose is served by imposing such a burden upon a purchaser. To the contrary, it encourages predatory business practice and offends the principle that equity will suffer no wrong to be without a remedy.

Defendant's contention that the contract of sale, particularly the merger or "as is" clause, bars recovery of the buyer's deposit is unavailing. Even an express disclaimer will not be given effect where the facts are peculiarly within the knowledge of the party invoking it *(Danann Realty Corp. v Harris,* 5 NY2d 317, 322; *Tahini Invs. v Bobrowsky, supra).* Moreover, a fair reading of the merger clause reveals that it expressly

disclaims only representations made with respect to the physical condition of the premises and merely makes general reference to representations concerning "any other matter or things affecting or relating to the aforesaid premises". As broad as this language may be, a reasonable interpretation is that its effect is limited to tangible or physical matters and does not extend to paranormal phenomena. Finally, if the language of the contract is to be construed as broadly as defendant urges to encompass the presence of poltergeists in the house, it cannot be said that she has delivered the premises "vacant" in accordance with her obligation under the provisions of the contract rider.

To the extent New York law may be said to require something more than "mere concealment" to apply even the equitable remedy of rescission, the case of *Junius Constr. Corp. v Cohen* (257 NY 393, *supra),* while not precisely on point, provides some guidance. In that case, the seller disclosed that an official map indicated two as yet unopened streets which were planned for construction at the edges of the parcel. What was not disclosed was that the same map indicated a third street which, if opened, would divide the plot in half. The court held that, while the seller was under no duty to mention the planned streets at all, having undertaken to disclose two of them, he was obliged to reveal the third *(see also, Rosenschein v McNally,* 17 AD2d 834).

In the case at bar, defendant seller deliberately fostered the public belief that her home was possessed. Having undertaken to inform the public-at-large, to whom she has no legal relationship, about the supernatural occurrences on her property, she may be said to owe no less a duty to her contract vendee. It has been remarked that the occasional modern cases which permit a seller to take unfair advantage of a buyer's ignorance so long as he is not actively misled are "singularly unappetizing" (Prosser, Torts § 106, at 696 [4th ed 1971]). Where, as here, the seller not only takes unfair advantage of the buyer's ignorance but has created and perpetuated a condition about which he is unlikely to even inquire, enforcement of the contract (in whole or in part) is offensive to the court's sense of equity. Application of the remedy of rescission, within the bounds of the narrow exception to the doctrine of caveat emptor set forth herein, is entirely appropriate to relieve the unwitting purchaser from the consequences of a most unnatural bargain.

Accordingly, the judgment of the Supreme Court, New York

County (Edward H. Lehner, J.), entered April 9, 1990, which dismissed the complaint pursuant to CPLR 3211 (a) (7), should be modified, on the law and the facts, and in the exercise of discretion, and the first cause of action seeking rescission of the contract reinstated, without costs.

SMITH, J. (dissenting). I would affirm the dismissal of the complaint by the motion court.

Plaintiff seeks to rescind his contract to purchase defendant Ackley's residential property and recover his down payment. Plaintiff alleges that Ackley and her real estate broker, defendant Ellis Realty, made material misrepresentations of the property in that they failed to disclose that Ackley believed that the house was haunted by poltergeists. Moreover, Ackley shared this belief with her community and the general public through articles published in Reader's Digest (1977) and the local newspaper (1982). In November 1989, approximately two months after the parties entered into the contract of sale but subsequent to the scheduled October 2, 1989 closing, the house was included in a five-house walking tour and again described in the local newspaper as being haunted.

Prior to closing, plaintiff learned of this reputation and unsuccessfully sought to rescind the $650,000 contract of sale and obtain return of his $32,500 down payment without resort to litigation. The plaintiff then commenced this action for that relief and alleged that he would not have entered into the contract had he been so advised and that as a result of the alleged poltergeist activity, the market value and resaleability of the property was greatly diminished. Defendant Ackley has counterclaimed for specific performance.

"It is settled law in New York State that the seller of real property is under no duty to speak when the parties deal at arm's length. The mere silence of the seller, without some act or conduct which deceived the purchaser, does not amount to a concealment that is actionable as a fraud (see, *Perin v Mardine Realty Co.,* 5 AD2d 685, *affd* 6 NY2d 920; *Moser v Spizzirro,* 31 AD2d 537, *affd* 25 NY2d 941). The buyer has the duty to satisfy himself as to the quality of his bargain pursuant to the doctrine of caveat emptor, which in New York State still applies to real estate transactions." (*London v Courduff,* 141 AD2d 803, 804 [1988], *lv dismissed* 73 NY2d 809 [1988].)

The parties herein were represented by counsel and dealt at arm's length. This is evidenced by the contract of sale which, *inter alia,* contained various riders and a specific provision

that all prior understandings and agreements between the parties were merged into the contract, that the contract completely expressed their full agreement and that neither had relied upon any statement by anyone else not set forth in the contract. There is no allegation that defendants, by some specific act, other than the failure to speak, deceived the plaintiff. Nevertheless, a cause of action may be sufficiently stated where there is a confidential or fiduciary relationship creating a duty to disclose and there was a failure to disclose a material fact, calculated to induce a false belief. *(County of Westchester v Becket Assocs.,* 102 AD2d 34, 50-51 [1984], *affd* 66 NY2d 642 [1985].)* However, plaintiff herein has not alleged and there is no basis for concluding that a confidential or fiduciary relationship existed between these parties to an arm's length transaction such as to give rise to a duty to disclose. In addition, there is no allegation that defendants thwarted plaintiff's efforts to fulfill his responsibilities fixed by the doctrine of caveat emptor. *(See, London v Courduff, supra,* 141 AD2d, at 804.)

Finally, if the doctrine of caveat emptor is to be discarded, it should be for a reason more substantive than a poltergeist. The existence of a poltergeist is no more binding upon the defendants than it is upon this court.

Based upon the foregoing, the motion court properly dismissed the complaint.

Ross and Kassal, JJ., concur with Rubin, J.; Milonas, J. P., and Smith, J., dissent in an opinion by Smith, J.

Judgment, Supreme Court, New York County, entered on April 9, 1990, modified, on the law and the facts, and in the exercise of discretion, and the first cause of action seeking rescission of the contract reinstated, without costs.