**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation, Plaintiff—Counter–Defendant—Appellee,**

v.

**EMHART CORPORATION, a Virginia Corporation, Defendant Counterclaimant, Third Party Plaintiff—Appellant,**

v.

**Richard F. VITKUS, Third–Party–Defendant.**

No. 92–1109.

United States Court of Appeals, Tenth Circuit.

Dec. 13, 1993.

Peter L. Edwards of Rothgerber, Appel, Powers & Johnson, Denver, CO (Kenneth A. Sagat and Howard Wildman of D'Amato & Lynch, New York City and James M. Lyons and Patrick M. Flaherty of Rothgerber, Appel, Powers & Johnson, Denver, CO with him on the brief) for plaintiff/counter-defendant/appellee.

Brent N. Rushforth of Jenner & Block, Washington, DC (Michael T. McConnell and Robert M. Baldwin of Long & Jaudon, Denver, CO and Ann M. Kappler and David W. DeBruin of Jenner & Block, Washington, DC, with him on the brief) for defendant counterclaimant/third party plaintiff/appellant.

Before BALDOCK, Circuit Judge, WOOD, Senior Circuit Judge,* and EBEL, Circuit Judge.

EBEL, Circuit Judge.

This case is before us on appeal of the district court's grant of summary judgment to the plaintiff-appellee, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). The district court found that the defendant-appellant, Emhart Corporation ("Emhart"), had made material misrepresen-

tations to National Union when applying for liability insurance for one of its officers, Richard F. Vitkus ("Vitkus"). The court concluded that, based on these misrepresentations, Emhart was estopped to deny its obligation to indemnify Vitkus against claims charging Vitkus with illegal actions taken in his capacity as a corporate director of Silverado Savings & Loan before Vitkus was hired by Emhart. We reverse the order of the district court and grant summary judgment in favor of Emhart.

*Facts*

This case grows out of the failure of Silverado Banking, Savings and Loan Association ("Silverado"). After Silverado was seized in December of 1988, the Federal Deposit Insurance Corporation ("FDIC") instituted a civil suit against the officers and directors of Silverado (including Vitkus, who served as an outside director) and against Silverado's primary outside counsel, Sherman & Howard. Following prolonged negotiations, a global settlement was reached under which the defendants agreed to pay a total of 26.5 million dollars to the FDIC. National Union, which had issued liability insurance for Sherman & Howard, Vitkus and another individual defendant, agreed to pay the total settlement and then proceeded to negotiate separate agreements with each of the defendants concerning their respective portions of the liability. The instant action concerns who should pay for the 10 million dollar portion of the settlement apportioned to Vitkus.

From 1978 through most of 1986, Vitkus was an Executive Officer and General Counsel of Beatrice, Inc. ("Beatrice"). In 1983, as part of his responsibilities at Beatrice, Vitkus was asked to serve on the Board of Directors of Silverado. Vitkus became an outside director of Silverado and served in that capacity until Silverado was seized in 1988.

In early 1986, Beatrice was acquired by a third party through a merger. In late 1986, Vitkus resigned from his position as an officer of Beatrice, but continued on as a Silverado director at the request of Silverado's

---

* The Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

chairman, Michael R. Wise. On January 5, 1987, Vitkus executed a general release of all claims that he might have against Beatrice, and he received a severance package worth in excess of one million dollars.

In May of 1988, Vitkus was hired as the general counsel of Emhart. Although Emhart had no business relationship with, or interest in, Silverado, Emhart agreed to allow Vitkus to continue serving as a director of Silverado. Shortly thereafter, at Vitkus' request, Emhart obtained an endorsement from its insurance carrier, National Union, covering Vitkus' activities as a director of Silverado. Endorsement 26 provided for excess coverage on a "triple indemnity basis" under which National Union would provide coverage only after any Silverado insurance, any indemnity provided by Silverado, and any indemnity provided by Emhart.

On August 10, 1988, Vitkus informed National Union of financial difficulties at Silverado. Shortly thereafter, the FDIC seized Silverado. On September 21, 1990, the FDIC, acting in its capacity as receiver for Silverado, sued the senior managers and outside directors of Silverado and Sherman & Howard, who was Silverado's counsel. The suit charged, *inter alia*, that the outside directors acted with gross negligence in the performance of their duties and breached their fiduciary duty. The FDIC also sought the recovery of funds that had been diverted to senior managers as well as the recovery of excess compensation that had been paid to many of the defendants. Additionally, the suit charged Sherman & Howard and one of its partners, Ronald Jacobs, with breach of fiduciary duty, professional negligence, and aiding and abetting the senior management's breach of a fiduciary duty.

In September of 1990, Vitkus informed National Union that he had been sued. At National Union's request, Vitkus also sought indemnification from Emhart, but Emhart claimed, among other defenses, that it had no obligation to indemnify Vitkus for actions taken before Vitkus was employed by Emhart. All the improprieties and illegalities alleged in the FDIC suit occurred between

December 1985 and March 1987, which was long before Vitkus was employed by Emhart.

The defendants in the FDIC action participated in intense settlement negotiations with the FDIC. National Union participated in the negotiations as the insurer of Sherman & Howard, Jacobs and Vitkus.[1] However, Emhart was not a party to the FDIC litigation and did not participate in the settlement talks, despite being encouraged to do so by the court. The negotiations culminated in a global settlement agreement that was approved by the court. *FDIC v. Wise*, NO. 90–F–1699, slip op. (D.Colo. June 18, 1991). Under the settlement agreement, National Union agreed to pay a total of 26.5 million dollars to the FDIC in settlement of claims against all the defendants. National Union then proceeded to negotiate separate, confidential agreements with each of the defendants regarding the defendants' respective portion of the liability. These agreements were not approved by the court. The amount apportioned to each defendant varied widely and with little apparent regard to culpability. Michael Wise, chairman of the bank and prime defendant, agreed to pay $75,000. Neil Bush and Marjorie Page, directors of the bank, agreed to pay $50,000 and $2,500, respectively. The bulk of the liability was allocated to Vitkus, whose only role was as an outside director alleged to have been deficient in his oversight, and Sherman & Howard, who agreed to pay 10 million dollars and 16 million dollars, respectively.

National Union brought the instant suit on April 26, 1991, in the midst of the settlement negotiations, seeking a declaratory judgment that Emhart was obligated to indemnify and reimburse it for whatever liability was ultimately allocated to Vitkus. At the time this suit was brought, neither the amount of the global settlement nor the amount to be apportioned to Vitkus was known.

Emhart filed a third-party complaint against Vitkus alleging breach of fiduciary duty and reimbursement for any amounts that it was determined to owe to National Union. Emhart also filed a counterclaim

**1.** We do not in this appeal address the scope or coverage of National Union's insurance policy.

against National Union alleging breach of contract and bad faith.

On February 26, 1992, Chief Judge Finesilver, of the United States District Court for the District of Colorado, issued an order disposing of nine summary judgment and other pending motions in this and a related case.[2] In that portion of the order relevant to this appeal, the court ruled that Emhart had made material misrepresentations to National Union when it applied for liability insurance for Vitkus as a director of Silverado. Based on these misrepresentations, the court ruled that Emhart was estopped to deny its obligation to indemnify Vitkus for that portion of the FDIC settlement apportioned to him. Accordingly, Emhart was ordered to pay National Union 10 million dollars in damages representing the 10 million dollars that National Union allocated to Vitkus and then paid on behalf of Vitkus in the global settlement. The court also dismissed Emhart's counterclaims against National Union. However, it declined to grant summary judgment on Emhart's third-party claims against Vitkus.

Emhart filed a motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e). In its motion, Emhart charged that the court made several errors of law and improperly awarded monetary relief without considering the reasonableness of the underlying allocation to Vitkus. The district court denied Emhart's motion, and this appeal followed.

*Standard of Review*[3]

■ We review summary judgment orders de novo, using the same standards applied by the district court. *Osgood v. State Farm Mut. Auto. Ins. Co.,* 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is ap-

propriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing a genuine issue for trial as to elements essential to the non-moving party's case that the moving party has called into question. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings, but must designate specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

*Choice of Law*

Although there was some dispute earlier in the litigation concerning the appropriate law to apply to each component of the litigation, the parties have since resolved these differ-

---

**2.** In the related case, Vitkus sued Beatrice claiming common law indemnity, breach of indemnity contract and breach of a contract to provide insurance. National Union intervened as a third-party plaintiff. Beatrice counterclaimed against Vitkus and National Union alleging breach and knowing participation in breach of fiduciary duty, and conspiracy to shift the burden of settlement. Beatrice also filed a third-party complaint against Sherman & Howard and Jacobs claiming that they conspired to reach a secret allocation agreement. The rulings in that case are addressed in *Vitkus v. Beatrice Company,* 11 F.3d 1535 (10th Cir.1993).

**3.** As an initial matter, Emhart complains that the district court applied an improper summary judgment standard. However, the district court considered nine motions in its February 26, 1992 order. The standard enunciated by the district court was proper as to some of these motions. Emhart makes no attempt to identify, and our review of the district court's order has failed to reveal, any evidence that the court applied an improper summary judgment standard to the motions before us in this appeal.

ences. They agree that the law of New York applies to the insurance policy, the law of Virginia applies to Emhart's Articles of Incorporation and questions of corporate law, and the law of Colorado applies to Emhart's bad-faith counterclaim.

*Discussion*

We find that the district court erred in its finding that Emhart was required to ·pay National Union the 10 million dollars that National Union had apportioned to Vitkus under the settlement agreement in the FDIC suit. The record does not support the conclusion that Emhart made material misrepresentations to National Union when it applied for liability insurance upon which an estoppel claim could be predicated. Further, the record clearly establishes that Emhart did not represent that it would indemnify, nor that it was authorized to indemnify, Vitkus for the actions underlying the FDIC suit, all of which actions pre-dated Vitkus' association with Emhart. Accordingly, summary judgment should have been granted in favor of Emhart. Finally, we conclude that the district court properly dismissed Emhart's counterclaims against National Union.

I.  *There is no evidence in the record that Emhart made any representation, either express or implied, that it would indemnify Vitkus for actions taken on the Silverado board before Vitkus was employed by Emhart.*

In addressing the question of Emhart's obligations to indemnify Vitkus, the district court found, pursuant to Emhart's Articles of Incorporation and Virginia law, that Emhart "clearly had the power to authorize indemnification for Vitkus." Because Emhart possessed that power, the district court found that when Emhart applied for "triple indemnity" liability insurance, it had an "obligation to disclose to National Union the material facts that it had not extended and had no intention of extending indemnity to Vitkus for his service on the Silverado board. As a matter of law [the court concluded] that Emhart's failure to disclose these facts constituted a material misrepresentation." Order at 13. Because of these misrepresentations, the

court concluded that Emhart was estopped to deny its obligation to indemnify Vitkus.

We find that the district court erred in this regard. The district court failed to recognize the importance of the distinction between Emhart's possible obligation to indemnify Vitkus for actions taken òn the Silverado Board *after* Vitkus became employed by Emhart and the claim here asserted by National Union that Emhart impliedly represented that it would indemnify Vitkus for actions taken *before* Vitkus had any relationship whatsoever with Emhart. The underlying liability in the instant case emanates from the FDIC suit that ·alleged misconduct of Silverado occurring between December 1985 and March 1987. Vitkus was not hired by Emhart until May of 1988. However, the record reveals absolutely no evidence that Emhart represented, explicitly or implicitly, that it would indemnify Vitkus for his actions as a director of Silverado prior to the time he commenced his employment with Emhart.

The district court predicated its ruling to the contrary on its conclusions that: (i) Emhart was authorized by its Articles of Incorporation in conjunction with Virginia law to indemnify Vitkus, and (ii) that Emhart had an obligation to inform National Union of its intent not to indemnify Vitkus when it applied for insurance covering Vitkus' service on the Silverado board. The district court concluded that Emhart's failure explicitly to advise National Union of its intention not to indemnify Vitkus constituted an implied or explicit representation that it would indemnify Vitkus. We will consider each of these conclusions in turn.

A.  *Emhart was not authorized by its Articles of Incorporation or Virginia law to indemnify Vitkus for actions that Vitkus took as a director of Silverado during the period of time before Vitkus was employed by Emhart.*

█ The district court held that Article VII, §. 12, of Emhart's Articles of Incorporation, in conjunction with Virginia law, authorized "discretionary indemnification." Section 12 provides that "[n]otwithstanding the foregoing, the Corporation shall indemnify directors and officers to the fullest extent

permitted by law." The district court found that §§ 13.1–697,[4] 13.1–702,[5] and 13.1–704.[6] of the Virginia Code authorized the indemnification of officers such as Vitkus. However, we are unable to find in those provisions of Virginia law any authority for Emhart to indemnify Vitkus for actions (1) taken prior to the time Vitkus became an officer or employee of Emhart, and (2) relating to a separate company as to which Emhart had no interest or involvement.[7]

First, the language of Va.Code Ann. § 13.1–697 provides a corporation with authority to indemnify only an "individual made a party to a proceeding because he is or was a director." Vitkus could not have been made a party to the FDIC litigation because he is or was a director of Emhart since the actions giving rise to the FDIC litigation occurred long before Vitkus was ever employed by Emhart.

Second, Va.Code Ann. § 13.1–702 does not expand the circumstances set forth in the rest of Article 13.1 in which Emhart is authorized to indemnify Vitkus. Rather, it merely extends the same indemnification rights provided for directors to officers, employees and agents.

Third, Va.Code Ann. § 13.1–704 does not authorize Emhart to indemnify Vitkus' pre-employment actions. That provision grants corporations the power to "make any further

---

4. **§ 13.1–697. Authority to indemnify.**—A. Except as provided in subsection D of this section, a corporation may indemnify an individual made a party to a proceeding because he is or was a director against liability incurred in the proceeding if:

1. He conducted himself in good faith; and
2. He believed:
a. In the case of conduct in his official capacity with the corporation, that his conduct was in its best interests; and
b. In all other cases, that his conduct was at least not opposed to its best interests; and
3. In the case of any criminal proceeding, he had no reasonable cause to believe his conduct was unlawful.

.   .   .   .   .

D. A corporation may not indemnify a director under this section:
1. In connection with a proceeding by or in the right of the corporation in which the director was adjudged liable to the corporation; or
2. In connection with any other proceeding charging improper personal benefit to him, whether or not involving action in his official capacity, in which he was adjudged liable on the basis that personal benefit was improperly received by him.
E. Indemnification permitted under this section in connection with a proceeding by or in the right of the corporation is limited to reasonable expenses incurred in connection with the proceeding.
Va.Code Ann. § 13.1–697.

5. **§ 13.1–702. Indemnification of officers, employees and agents.**—Unless limited by a corporation's articles of incorporation,
1. An officer of the corporation is entitled to mandatory indemnification under § 13.1–698, and is entitled to apply for court-ordered indemnification under § 13.1–700.1, in each case to the same extent as a director; and to

an officer, employee, or agent of the corporation to the same extent as to a director.
Va.Code Ann. § 13.1–702.

6. **13.1–704. Application of article.**—A. Unless the articles of incorporation or bylaws expressly provide otherwise, any authorization of indemnification in the articles of incorporation or bylaws shall not be deemed to prevent the corporation from providing the indemnity permitted or mandated by this article.
B. Any corporation shall have power to make any further indemnity, including indemnity with respect to a proceeding by or in the right of the corporation, and to make additional provision for advances and reimbursement of expenses, to any director, officer, employee or agent that may be authorized by the articles of incorporation or any bylaw made by the shareholders or any resolution adopted, before or after the event, by the shareholders, except an indemnity against (i) his willful misconduct, or (ii) a knowing violation of the criminal law. Unless the articles of incorporation, or any such bylaw or resolution expressly provide otherwise, any determination as to the right to any further indemnity shall be made in accordance with § 13.1–701 B. Each such indemnity may continue as to a person who has ceased to have the capacity referred to above and may inure to the benefit of the heirs, executors and administrators of such a person.
C. No right provided to any person pursuant to this section may be reduced or eliminated by any amendment of the articles of incorporation or bylaws with respect to any act or omission occurring before such amendment.
Va.Code Ann. § 13.1–704.

7. Indeed, such indemnification of an officer for actions taken on an outside board of a totally unrelated company before such person was ever associated with the company giving the indemnity, might be regarded an *ultra vires* act. *See Petty v. Bank of New Mexico Holding Co.,* 109 N.M. 524, 787 P.2d 443, 451 (1990).

indemnity." However, that indemnity may only be made (i) to a "director, officer, employee or agent" and (ii) only in circumstances that are "authorized by the Articles of Incorporation or any bylaw made by the shareholders or any resolution adopted, before or after the event, by the shareholders." Neither of those conditions is satisfied in the instant case. First, for purposes of indemnification in connection with the FDIC litigation, Vitkus is not properly considered a "director" of Emhart under Virginia law. Section 13.1–696 defines director, in relevant part, as "an individual who, while a director of a corporation, is or was serving at the corporation's request as a director, officer, partner, trustee, employee or agent of another foreign or domestic corporation." Va. Code.Ann. § 13.1–696. Because Vitkus performed the acts underlying the FDIC suit before he was employed by Emhart, the acts did not occur either "while [he was] a director" of Emhart or while he was "serving at [Emhart's] request." Second, while § 13.1–704 does grant Emhart the power to make indemnity beyond that provided for in the statute, it does not in itself authorize indemnification in any particular circumstances. Rather, § 13.1–704 merely allows the corporation, through its articles of incorporation, bylaws or resolution to indemnify directors in circumstances not delineated in the Virginia Code. We are unable to find authorization for indemnification of Vitkus' pre-employment actions in any of the provisions of Emhart's Articles of Incorporation.[8] Furthermore, National Union has not argued that either Emhart's bylaws or shareholder resolutions authorized indemnification for pre-employment actions. In the absence of an *"express"* provision to the contrary, all indemnification under § 13.1–704 must be accomplished in accordance with § 13.1–701B. Those provisions were not satisfied here. Nothing in the statutory references or Articles of Incorporation cited by the district court could give rise to either an authorization or inference of indemnification of Vitkus for his prior service on the Silverado Board.

**B.** *Emhart did not represent that it would indemnify Vitkus for actions taken at Silverado before Vitkus was employed by Emhart.*

■ We find no evidence that Emhart either explicitly or implicitly misrepresented

---

**8.** Section (iii) of Article VII sets forth those circumstances under which Emhart was required to indemnify certain of its employees serving on an outside board of a company not majority owned by Emhart. It requires indemnification when Emhart has made a written request that the individual serve in such a capacity. It states, in relevant part:

Unless the person has engaged in willful misconduct or a knowing violation of the criminal law, the Corporation shall indemnify any person who was or is a party to any proceeding ... against any liability incurred by him in connection with such proceeding by reason of the fact that he is or was ... (iii) a person serving at the written request of the Corporation as a director, trustee, partner, or officer of another corporation, partnership, joint venture, trust, employee benefit plan or other entity, enterprise or association.

Articles of Incorporation, Article VII, § (iii).

We agree with the district court's conclusion that because no such written request was made by Emhart for Vitkus to serve on the Silverado board, § (iii) did not operate to require that Emhart indemnify Vitkus.

Article VII, § 8 of the Articles of Incorporation sets forth those circumstances under which the board is authorized to indemnify any officers not indemnified under the provisions of § (iii). It provides, in relevant part:

The Board of Directors is hereby empowered, by majority vote of a quorum consisting of disinterested Directors, to cause the Corporation to indemnify or contract to indemnify any person not specified in section (2) or (3) of this Article who was, is or may become a party to any proceeding, *by reason of the fact that he ... is or was serving at the request of the Corporation as director, officer, employee or agent of another corporation* ... to the same extent as if such person were specified as one to whom indemnification is granted in § (3).

Articles of Incorporation, Article VII, § 8, (emphasis added).

Even if we were to construe the fact that Emhart allowed Vitkus to continue serving on Silverado's board as a "request," § 8 does not authorize Emhart to indemnify Vitkus for the actions alleged in the FDIC suit because they occurred before Vitkus was employed by Emhart. Because liability for those actions arose before Vitkus joined Emhart, it could not possibly have arisen "by reason of the fact" that Vitkus was serving on the Silverado Board at the request of Emhart. *See Sorensen v. Overland Corp.,* 142 F.Supp. 354 (D.Del.1956), *aff'd.,* 242 F.2d 70 (3d Cir.1957) (refusing to allow indemnification where acts giving rise to liability occurred before individual was hired by company and therefore were not "by reason of" service thereto).

that it would indemnify Vitkus for actions taken as a director of Silverado before he was employed by Emhart. The parties do not substantially dispute that there was no explicit misrepresentation in the instant case. Instead, National Union argues, and the district court seemed to accept, that Emhart failed to disclose information which, because of the circumstances and nature of the transaction, it had a duty to disclose.

■ Under New York law, there is no general obligation to provide information in the course of commercial transactions absent a confidential or fiduciary relationship.[9] *Stambovsky v. Ackley*, 169 A.D.2d 254, 572 N.Y.S.2d 672, 675 (1991). However, New York courts have recognized that a duty to speak can arise where one party's actions or the circumstances of the transaction are tantamount to a false representation. *Bank of New York v. Asati, Inc.*, 184 A.D.2d 443, 585 N.Y.S.2d 411, 412 (1992).

National Union argues that Emhart implicitly misrepresented an intention to indemnify Vitkus when it applied to National Union for insurance coverage on a "triple indemnity basis." Under that type of coverage, National Union is only obligated to pay for losses in excess of three "primary" sources of coverage enumerated in the Endorsement that may exist. National Union argues that because Endorsement 26 lists "any indemnification provided by Emhart" as one of the primary sources of coverage, it amounts to a representation that Emhart would indemnify Vitkus, or at a minimum, as the district court found, that Emhart had an obligation to inform National Union if it did not plan to provide indemnification.

Endorsement 26 provides that the insurance covering Vitkus' directorship at Silverado

> shall be specifically excess of any insurance in force as respects to these outside entities and/or any indemnification provided by the outside entity scheduled in this endorsement as well as, *any* indemnification provided by Emhart Corporation and its present subsidiaries.

Aplt.Apx. at 689 (emphasis added). The use of the term "any indemnification" implies that the existence of indemnification from Emhart was uncertain or at least limited in scope. Further, the Endorsement makes no mention of indemnification by Emhart for acts that were taken before Vitkus was employed by Emhart. As we have found, such indemnification is not authorized by either Emhart's Articles of Incorporation or Virginia law. If National Union had meant to require such extraordinary indemnification, we would expect to find that requirement expressed in the policy. Instead, the use of the term "any" convinces us that indemnification was not required and that National Union was on notice that it may not exist.[10]

Indeed, in issuing its coverage to Vitkus for service on the Silverado Board, National Union accepted a representation from Vitkus of no known liability that was expressly limited to the period *after* Vitkus was employed

---

**9.** National Union argued that under Endorsement 26, Emhart should be considered a primary insurer and accordingly should be found to owe a duty of care to National Union as an excess insurer. *See Hartford Accident & Indemnity v. Michigan Mutual Ins.*, 93 A.D.2d 337, 462 N.Y.S.2d 175, 178 (Ct.App.1983), *aff'd.*, 61 N.Y.2d 569, 475 N.Y.S.2d 267, 463 N.E.2d 608 (1984); *Hartford Accident & Indemnity v. Commercial Union Ins.*, 772 F.Supp. 741, 744 (E.D.N.Y.1991), *aff'd.*, 962 F.2d 1 (2d Cir.1992). We are not convinced by National Union's contention that Emhart should be considered a primary insurer under the Endorsement. Emhart, rather than acting as an insurer, was Vitkus' employer who acquired insurance on his behalf. Although Emhart may have agreed to indemnify Vitkus for certain actions covered by the insurance policy, indemnification and insurance are sufficiently distinct that we decline to hold Emhart to the duties owed as if it were a primary insurer. *See* 13 Fletcher Cyc. Corporations, § 6045.40 at 751 and § 6045.30 at 745 (1991); 18 B Am.Jur.2d Corporations § 1900 at 751 (1985); Emhart Articles of Incorporation, § VII, § 9. In any event, in light of our findings that there was no misrepresentation and that Emhart was not authorized to indemnify for pre-employment actions, we would not find that Emhart breached a duty owed to National Union.

**10.** Prior counsel for National Union seemed to recognize that Emhart's indemnification obligations were limited when they wrote during an early stage of this litigation that "National Union would be excess *any* indemnification that Emhart *might* provide." Aplt.Apx. at 1262. (emphasis added).

by Emhart. That representation letter by Vitkus stated,

I hereby state, as requested, that I am not aware of any acts, errors, or omissions which have occurred or been taken *subsequent to 5–23–88* and which would give rise to a claim under the policy. (emphasis added)

Overall, we find no evidence in the Endorsement that Emhart represented that it would indemnify Vitkus for acts taken before he was an employee of Emhart. Accordingly, we conclude that the district court applied the estoppel doctrine in error.

II. *National Union has failed to present an adequate alternative legal theory upon which the relief ordered by the district court can be justified.*

■ National Union has suggested three alternative theories upon which to affirm the district court's award: breach of the duty owed by a primary to a secondary indemnitor, damages for misrepresentation, and restitution in equity.[11] We decline to affirm the district court's order based on any of these theories.

The award cannot be upheld as damages for breach of the duty owed by a primary to an excess insurer. Given the language of Endorsement 26, Emhart is not properly considered a primary insurer and therefore no such duty arose in the instant case.

■ Having concluded that there is no basis upon which to find that Emhart misrepresented its intentions regarding indemnification of Vitkus for acts prior to coming to Emhart, that Emhart's Articles of Incorporation and Virginia law did not authorize such indemnification, and that there was no basis upon which National Union could rely on any such alleged representations, we decline to uphold the district court's award as damages for misrepresentation.

■ Finally, we reject the argument that the district court's award can be justified as equitable restitution. National Union argues that it is entitled to be reimbursed for the 10 million dollar payment made on behalf of Vitkus because it made the payment relying on Emhart's indemnification obligation and to hold otherwise would cause an unjust enrichment. However, National Union paid the 10 million dollars as a volunteer with the full knowledge that Emhart denied any obligation to indemnify Vitkus for the actions underlying the FDIC litigation. *See The Toledo,* 122 F.2d 255, 257 (2d Cir.), *cert. denied,* 314 U.S. 689, 62 S.Ct. 302, 86 L.Ed. 551 (1941). National Union was aware as early as September 1990 that Emhart denied any obligation to indemnify Vitkus in the FDIC litigation. In fact, National Union brought this action to compel Emhart to indemnify Vitkus in April 1991. However, the settlement was not completed and National Union did not make any payments until June 1991.[12]

Furthermore, equitable relief demands equity. We find that the award in the instant case is terribly inequitable. First, it was inequitable to apportion 10 million dollars of the FDIC settlement to Vitkus while much more culpable Silverado actors settled for a

---

11. We recognize that we can affirm the order of the district court on any ground with support in the record. *Colorado Flying Academy, Inc. v. U.S.,* 724 F.2d 871, 880 (10th Cir.1984), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986); C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure,* § 2716 at 658 (1983). However, we are not inclined to accept what we perceive to be post hoc rationalizations of the district court's award, raised for the first time on appeal. Although we find a foundation for the misrepresentation arguments in both the district court's opinion and National Union's motion for summary judgment, the arguments concerning the breach of a duty owing to an excess indemnitor and equitable restitution were raised for the first time in National Union's appellate brief.

12. Indeed, it is hard to see how National Union could ever have made this 10 million dollar payment on behalf of Vitkus believing it had a legal right to be reimbursed by Emhart. If National Union believed that Emhart had the primary obligation to cover Vitkus' liability, it could not reasonably have believed that it would ever be obligated to make any payments under its "excess" coverage policy. Hence, any such payments would have been volunteered. On the other hand, if National Union believed that Emhart did not have an obligation to indemnify Vitkus for events pre-dating Vitkus' employment by Emhart, then National Union had no basis to expect reimbursement from Emhart.

tiny fraction of that amount.[13] Second, it was inequitable to hold Emhart liable for such payments because: (i) the events giving rise to Vitkus' liability occurred over one year before Vitkus came to work for Emhart, and (ii) Emhart has never had any direct dealings with, or financial interests in, Silverado. Even if we were to find that the award was equitable, equity cannot require what the law forbids. *See INS v. Pangilinan,* 486 U.S. 875, 883, 108 S.Ct. 2210, 2216, 100 L.Ed.2d 882 (1988). Under Virginia law and Emhart's Articles of Incorporation, Emhart was not authorized to indemnify Vitkus for actions taken as a member of Silverado's board before Vitkus came to work for Emhart.

III. *Emhart's summary judgment motion and bad faith counterclaims*

■ In addition to its objections to the district court's order granting National Union's motion for summary judgment, Emhart also appeals the district court's denial of its summary judgment motion.[14] Where the standard of Fed.R.Civ.P. 56(c) has been met, we are free to enter an order granting summary judgment even where the district court denied the motion. C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure,* § 2716 at 660 (1983); *see Dickeson v. Quarberg,* 844 F.2d 1435, 1444–45 n. 8 (10th Cir. 1988). Having found no legal theory to support National Union's claim against Emhart, and having concluded that Emhart was not

authorized under Virginia law or the Articles of Incorporation to indemnify Vitkus for actions taken at Silverado before he was employed by Emhart, we conclude that Emhart's summary judgment motion should have been granted.[15]

■ Emhart also appeals from that portion of the district court's order dismissing Emhart's bad faith counterclaims against National Union.[16] Aplt.Opening Br. at 49. We agree with the district court that a disagreement over the terms of a contract, such as the one that underlies this action, is insufficient to state a claim for bad faith. *See Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1274–75 (Colo.1985); *Brandon v. Sterling Colorado Beef Co.,* 827 P.2d 559, 560–61 (Colo.App.1991); *Bucholtz v. Safeco Ins. Co.,* 773 P.2d 590, 593 (Colo.App.1988). Accordingly, we affirm the district court's dismissal of the counterclaims.

*Conclusion*

For the foregoing reasons, we REVERSE the order of the district court granting National Union's motion for summary judgment. We also REVERSE the order of the district court denying Emhart's motion for summary judgment and enter an order GRANTING Emhart's motion for summary judgment. Finally, we AFFIRM the district court's order dismissing Emhart's counterclaims against National Union. This matter is RE-

---

**13.** Because we rule that summary judgment should have been granted to Emhart, we do not find it necessary to consider Emhart's challenge that the district court erred when it refused to consider the reasonableness of the amount of the global settlement that was allocated to Vitkus. However, the circumstances surrounding the apportionment suggest that National Union was acting out of self-interest when it apportioned 10 million dollars to Vitkus. National Union had a potential liability of up to 30 million dollars under its policy with Sherman & Howard. Apportioning a substantial portion of the global liability to Vitkus was National Union's only hope to bring in Emhart, as a deep pocket, to share a significant portion of its potential liability.

**14.** Emhart filed for summary judgment asserting four grounds for its motion: (i) that National Union's claims were barred as an improper sub-

rogation claim against an insured; (ii) that Emhart did not agree to provide indemnification under Endorsement 26; (iii) that Emhart did not represent that it would indemnify Vitkus; and (iv) that the amount of any indemnification was limited under the insurance policy.

**15.** We find it unnecessary to address Emhart's additional arguments in light of our other rulings in this case.

**16.** In response to National Union's complaint, Emhart filed a counterclaim seeking compensatory and punitive damages as well as fees and costs from National Union's alleged breach of contract and breach of duty of good faith. Emhart limits its appeal to the dismissal of the bad faith claims and accordingly we consider only that portion of the counterclaim properly before us.

MANDED for further proceedings consistent with this opinion.